**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**LEONITE FUND I, LP**,

      Plaintiff,

v.

**HAWAIIAN SPRINGS, LLC** and **HSW HOLDINGS CORPORATION,**

      Defendants.

---

### PLAINTIFF'S MOTION TO APPOINT RECEIVER

---

Plaintiff Leonite Fund I, LP, by and through its undersigned counsel, submits this Motion pursuant to F.R.C.P. 66 for an Order appointing a Receiver for Defendants Hawaiian Springs, LLC and HSW Holdings Corporation (the "Defendants," or the "Companies").

### *** CONFERRAL CERTIFICATION ***

### FACTUAL BACKGROUND

1. Defendant HSLLC is a producer of premier bottled water products.

2. HSLLC's business operations are located on a parcel of land of approximately seven acres, located at 16-305 Volcano Road, Kea'au, Hawaii.

3. HSLLC leases the land (the "Leased premises") pursuant to a lease agreement between HSLLC and Hawaii Brewery Development Co., Inc. ("HBDC").

4.     HSW is a holding company which owns a percentage of the issued and outstanding shares of HSLLC and is the Manager of HSLLC.

5.     HBDC has recently sued HSLLC for breach of its lease and Leonite was required to cure the default to preserve the lease.

6.     Leonite is concerned that future lease defaults are imminent.

7.     HSW and HSLLC have agreed to the appointment of a Receiver due to dire financial circumstances and to protect Leonite's collateral.  *See* Complaint Exhibits C and D, attached hereto.

8.     Leonite Fund I, LP loaned money to HSLLC and HSW (collectively, the "Borrowers"), as evidenced by a Senior Secured Promissory Note (the "Promissory Note") with Leonite as Holder, and as amended by a First Amendment to Senior Secured Convertible Promissory Note, dated March 20, 2023 (the "First Amendment"), and a Pledge and Security Agreement, dated September 28, 2022 (the "Security Agreement"), in which HSLLC and HSW granted Leonite a Security Interest in certain collateral.

9.     The Senior Secured Promissory Note is dated September 28, 2022.  *See* Complaint Exhibit A.

10.     Pursuant to the Promissory Note, Leonite is entitled to the appointment of a Receiver and consistent with its obligations, HSLLC has consented to the appointment of a Receiver.  *See* Promissory Note, Exh. A, at ¶ 4.1.5.

2

11.    The parties documented Leonite's rights in their Pledge and Security Agreement dated September 28, 2022, a copy of which is attached to the Complaint as Exhibit B (the "Pledge and Security Agreement").

12.    Leonite was granted a security interest in all of HSLLC's collateral including its Lease and other contracts.

13.    HSLLC is in default on the loan.

14.    HSLLC is or was a defendant in a breach of contract and eviction lawsuit through which HBDC sought to evict HSLLC and to recover alleged monetary damages.

15.    Pursuant to the Pledge and Security Agreement, Leonite has the right to the appointment of a receiver "as a matter of right" upon an event of default. *See* Pledge and Security Agreement, Complaint Exhibit B at Section 7(a)(i)(G).

16.    Leonite loaned additional funds to HSLLC to bring HSLLC current on its rent and other obligations to HBDC.

17.    Leonite is concerned that HSLLC will continue to default on its lease obligations to the detriment of Leonite and its collateral.

18.    If HSLLC were to be evicted from the Leased Premises, HSLLC would lose its sole source of premier water and would not be able to remain in business, causing substantial damages to the creditors, investors and employees of HSLLC and HSW including Leonite.

19.    On or about December 13, 2023, Leonite sent a notice of default to HSW and HSLLC asserting that they were in default of their payment obligations under the Promissory Note and that, as of that date, the sum of $2,254,323.58 was due and owing by Borrowers to Leonite.

20.    HSW and HSLLC do not have sufficient assets to pay this sum.

21.    Without the appointment of a receiver pursuant to Fed. R. Civ. P. 66 and C.R.S. 38-38-602(3), the interests of Leonite and other creditors are in dire jeopardy.

22.    On December 26, 2023, the parties agreed to the appointment of a Receiver due to the financial issues and  crises facing HSLLC.  *See* Complaint Exhibits C and D.

23.    On January 1, 2024, the parties agreed to be governed by the laws of the State of Colorado and to venue in state and federal courts located in Colorado.  *See* Complaint Exhibit E.

## **ARGUMENT**

**A.    Appointment of a Receiver is Warranted Pursuant to F.R.C.P. Rule 66 because the Companies' assets are in danger of being lost.**

Pursuant to F.R.C.P. 66(a), a receiver may be appointed by the Court pursuant to this Court's equitable powers.  The Rule states:

### RULE 66. RECEIVERS

These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An

4

action in which a receiver has been appointed may be dismissed only by court order.

F.R.C.P. 66.  As explained by district courts, "this Rule [66] doesn't provide a standard for courts to apply when they are asked to appoint a receiver, nor the procedural mechanism for doing so. The court thus turns to [state] law to ascertain the governing legal standard and pertinent procedure." *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Acme Invs. & Jones Serv., LLC*, No. 23-205-DDC-ADM, 2023 WL 6516412, at *2 (D. Kan. Oct. 5, 2023).

**B.    Appointment of a Receiver is Supported by Colorado law and consistent with principles of equity.**

The parties agreed to submit to Colorado law for purposes of any receivership action.  *See* Exhibit E.  Colorado law stretching back more than a hundred years has determined that appointing a receiver is within the inherent equitable powers of a court. *See Johnson v. El Paso Cattle Co.*, 725 P.2d 1180 (Colo. App. 1986) (appointing a receiver is an inherent power of district court); *Melville v. Weybrew*, 106 Colo. 121 (1940) (court in equity had inherent authority to appoint receiver); *Roll v. Davis*, 85 Colo. 594 (1929) (courts have inherent power to appoint receivers to preserve property in litigation).

Further, "[t]he appointment of a receiver is within the sound discretion of the trial court…" *Jouflas v. Wyatt*, 646 P.2d 946, 947 (Colo. App. 1982).  The appointment of a receiver is proper where the moving party establishes that the company cannot carry out its authorized functions, and as a result thereof its property and assets are in danger of being dissipated or lost.  *Diaz v. Fernandez*, 910 P.2d 96, 97 (Colo. App.

5

1995) (quoting *Savageau v. Savageau*, 284 P.2d 810, 813 (Colo. 1955)); s*ee also Eureka Coal Co. v. McGowan*, 72 Colo. 402, 212 P. 521 (1922) (receiver necessary to manage or operate business where there is some disability preventing the continued operations of the company).

"In an equitable receivership proceeding such as this, the receiver acts as an officer of the Court, and holds assets of the receivership in that capacity... The receiver holds all property for the ultimate use and benefit of the receivership estate, subject to the exclusive jurisdiction and control of this Court." *Eller Industries, Inc. v. Indian Motorcycle Mfg., Inc.*, CIV.A. 95-Z-777, 1997 WL 470368, at *1–2 (D. Colo. Aug. 4, 1997) (collecting cases). When in the hands of a receiver appointed by the court, the property of the entity in receivership is in *custodia legis*. *See Atlantic Trust Co. v. Chatman*, 208 U.S. 360, 372, 28 S.Ct. 406 (1908); *Union Pac., D. & G. Ry. Co. v. Perkins*, 7 Colo. App. 184, 42 P. 1047, 1048 (Colo. App. 1895). Consequently, as the receiver is an officer of the court holding the businesses in *custodia legis*, the businesses in receivership are in the custody of the court, not the receiver himself.

All of the Companies' assets are in danger of being lost because the spring water at issue is the Companies' primary asset and if the Companies are evicted by their Landlord, their ability to access the spring water that they sell will be terminated. The Companies have historically shown an inability to manage their finances, the Companies have recently been sued by their Landlord, and but for the Plaintiff's prompt

infusion of significant additional capital, in the form of a loan, this crucial asset would have been lost.

**C.     A Blanket Stay Order is Necessary to Preserve the Companies' assets.**

Plaintiff requests a blanket stay order to prevent interference with the receivership estate.  Such a stay is common in receiverships such as this in order to assure judicial efficiency.  As Judge Weinshienk explained:

> This Court has the power to enjoin particular actions or to issue a "blanket stay" order effective against all persons, including non-parties, of all proceedings against the receivership entity in order to prevent interference with administration of the receivership. *Id.* at 1368 (affirming the broad power of a federal district court to issue stays effective against all persons and non-parties, of all proceedings against the receivership entities where necessary to protect the federal receivership); *SEC v. United Financial Group,* 576 F.2d 217, 220 (9th Cir.1978) ("When the receivership court takes jurisdiction of the debtor's estate, it has power to issue orders barring actions which would interfere with its administration of that estate"); 2 *Clark on Receivers* § 625.2 ("appointing court frequently issues a blanket injunction against interference with the court's possession and control of the res"). The power of a federal court to enter such stays does not depend on specific congressional authorization. *Wencke,* 622 F.2d at 1371. Rather, this authority is based upon the inherent and broad equitable powers of federal courts to protect its jurisdiction over the property for which it has taken possession. *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970).

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F. Supp. 369, 373 (D. Colo. 1995).

In addition to promoting judicial efficiency, a blanket stay protects the rights of all creditors equally.

> We are clear that, as a general, if not a universal rule, all creditors seeking to assert equitable remedies against assets of which the court has taken charge by a receiver should become parties by intervention or otherwise to the cause in which the receiver was appointed, and prosecute their remedies *in that cause alone.* Creditors who stand out may be allowed to prosecute their legal remedies against the assets, if they can make them available; but, if they have to invoke the exercise of equitable powers by the same court, their legal remedies are not available, and they are in no condition to proceed by separate and independent actions.

*Id.  See also S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the []action. The district court took control over the properties in question when it imposed the receivership and appointed [the receiver] as receiver to manage those properties.  The blanket stay was found by the district court necessary to achieve the purposes of the receivership. We conclude the district court had the power to enter the order.").

## D.    Mr. Stevens is Well-Qualified to Serve as a Receiver.

Robert L. Stevens presently serves as the President of Strongbow Advisors, Inc. ("Strongbow"), a privately-owned corporation incorporated in the State of Colorado that provides receiver services and ancillary consulting services and is qualified to act as receiver in this case.  All of the Parties have consented to his appointment. Mr. Stevens' resume is attached to this Motion as Exhibit F.  Mr. Stevens has significant experience in management and preservation of distressed companies and assets, particularly with respect to receiverships.  Mr. Stevens is

prepared to take the Oath of Receiver submitted herewith and is prepared to post a

receiver's bond in the suggested amount of $1,000 or in another amount determined

by this Court.

WHEREFORE, Plaintiffs request that this Court enter an Order appointing

Robert L. Stevens as receiver (the "Receiver") in accordance with the following

terms in order to:

(a)    Take immediate control, to the exclusion of all others, over the Companies and all of their assets, their subsidiaries, current and historical, including, without limitation, all of the Companies' cash, bank and deposit accounts; accounts receivable, notes receivable, and other receivables; business investments and interest, whether legal or equitable, direct or indirect, in other business enterprises; tangible personal property; general intangibles; inventory; investment property; payment intangibles; real property; water rights; claims, causes of action, and choses of action of any kind or nature; instruments, documents, chattel paper, intellectual property, and letter-of-credit rights; and all the company's books and records and other papers including the company's shareholder books and records;

(b)    Manage, maintain, protect and preserve the Receivership Property as reasonably necessary to maximize the value and prevent diminution of its value; take possession of all bank and other deposit accounts of the Companies and their subsidiaries and all funds therein; and open, transfer and change all bank and trade accounts relating to the Companies and the Receivership Property, so that all such accounts are in the name of Mr. Stevens as Receiver for the Companies;

(c)    Close the Companies' and their subsidiaries' bank accounts and transfer the funds to one or more bank accounts at a bank or banks, financial institutions, mutual funds, brokerage institutions or other commercial depositories in the Denver, Colorado metropolitan area selected by Mr. Stevens, in his name as Receiver for the Companies;

(d)    Collect rents and revenues, income, profits, and other benefits of the Companies and their subsidiaries for the Receivership Property;

9

(e)    Collect all accounts, accounts receivable, notes receivable, income, profits and proceeds which are part of the Receivership Property or represent proceeds of the Receivership Property; including, as necessary, negotiate and deposit checks into accounts maintained by Mr. Stevens, and, as necessary, to collect and review mail directed to the Companies and their subsidiaries in order to collect incoming accounts receivable;

(f)    Investigate the assets, liabilities and financial situation of the Companies and their subsidiaries, and report to this court, within ninety (90) days after entry of this Order, regarding the nature of the assets, liabilities and financial situation of the Receivership Property;

(g)    Pay or negotiate expenses, bills, taxes, insurance and other legal obligations of the Companies and their subsidiaries;

(h)    Negotiate any new contracts and have all powers necessary to run the Companies;

(i)    Appoint interim management to oversee the operations of the company and to remove any personnel, if required;

(j)    Retain legal counsel and to commence, file and maintain legal proceedings to protect the Receivership Property or pursue claims against any individuals or entities that have created harm to the Companies and their subsidiaries and their creditors and shareholders;

(k)    Retain persons to support his efforts, as necessary, to ensure the continued and proper operation of the Companies;

(l)    Sell any corporate assets to satisfy judgments against the Companies and their subsidiaries;

(m)    Order dividends, distributions or other such actions that may be required for dissolution or reorganization of the Companies;

(n)    Do any and all acts necessary and convenient or incidental to the foregoing that the Receiver reasonably deems necessary to manage and preserve the Receivership Property;

(o)    Restore any changes by Defendant, such as issuance or cancellation of stock, made during the course of this petition prior to resolution; and

(p)     Borrow money, issue receiver's certificates, incur debt, issue any class of stock, debenture or other financial instrument as required to finance the administration of the estate.

Dated: January 18, 2024                    Respectfully submitted,

                                           */s/ Aaron A. Garber*
                                           Aaron A. Garber, #36099
                                           WADSWORTH GARBER WARNER CONRARDY, P.C.
                                           2580 West Main Street, Suite 200
                                           Littleton, Colorado 80120
                                           Telephone: (303) 296-1999
                                           Telecopy: (303) 296-7600
                                           agarber@wgwc-law.com

                                           And

                                           Zvi Raskin, Esquire
                                           1 Hillcrest Center Drive
                                           Suite 230
                                           Spring Valley, New York 10977
                                           Telephone: 845.202.3999
                                           E-Mail: zr@raskinlegal.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 18, 2024, I served by prepaid first class mail a copy of the **PLAINTIFF'S MOTION TO APPOINT RECEIVER** on all parties against whom relief is sought and those otherwise entitled to service at the following addresses:

Hawaiian Springs, LLC
Duane Moore, Manager
16-305 Volcano Road
Kea'au, Hawaii 96749

HSW Holdings Corporation
Duane Moore, President
16-305 Volcano Road
Kea'au, Hawaii 96749

*/s/ Nichole Garber*
For Wadsworth Garber Warner Conrardy P.C.