**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-00149-NYW-STV

**LEONITE FUND I, LP**,

        Plaintiff,

v.

**HAWAIIAN SPRINGS, LLC** and **HSW HOLDINGS CORPORATION,**

        Defendants.

---

## RECEIVER'S STATUS REPORT NO. 1

---

        Robert L. Stevens, the Receiver, submits his Status Report No. 1 (this "Report") pursuant to this Court's Order Appointing Receiver dated February 1, 2024.

### BACKGROUND

        Plaintiff Leonite Fund I, LP ("Leonite") brought this action on January 18, 2024, seeking to appoint a receiver over the assets of Hawaiian Springs, LLC and HSW Holdings Corporation (collectively, "the Business"). The Receiver was appointed on February 1, 2024.

### LIABILITIES

        Hawaiian Springs, LLC (the "Operating Entity") has liabilities that include $2,508,482.48 in amounts owed to vendors. A copy of a document detailing the names of the vendors and the amounts they are owed is attached as Exhibit 1.

The parent company, HSW Holdings Corporation ("HSW"), does not have a bank account or any operating activity and owns 60% of the Operating Entity. The Receiver will therefore consolidate the assets and liabilities of the receivership estate.

A balance sheet for the Operating Entity is attached as Exhibit 2. The balance sheet shows debt of $6,031,363.70 in notes payable as well as lease liabilities and pre-petition liabilities. Total liabilities are $8,545,105.87. Prior to this receivership, the Business has been owned by several different owners or groups of owners and one prior Chapter 11 bankruptcy proceeding. The business has raised funds primarily through debt offerings throughout its varied ownership.

**ASSETS**

At present, the business is not operational and has not produced bottled water since approximately October 2023. The location and the water spring in question are leased, and the landlord and owner of the location and spring, Hawaiian Brewery Development Company ("HBDC"), was attempting to evict the Business through two separate proceedings in the Circuit Court of the Third Circuit, State of Hawaii, Case Nos. 3CCV-23-0000303 and 3CCV-23-0000410, when the Receiver was appointed.

Almost immediately after appointment, this Court's Order Appointing Receiver was filed in both cases. *See* Exhibits 3 and 4. The Court in Hawaii has stayed both of the pending actions pursuant to this Court's Order.

Prior to the Receiver's appointment, the Business was defending the eviction. The Business disputes the materiality of any default. The Business has consistently paid the

monthly rent amount, lately with the assistance of Leonite.  There is and can be no dispute

that the Lease, with a remaining term of 40 years, is a very valuable asset of this estate.

The operating entity owns fully depreciated equipment on location.  Bottling

equipment is a line item on Exhibit 2, with a stated value of $400,000. The assets are old

and in various levels of disrepair, but after inspection by the Receiver (see below), they

appear useful and can commence operational usage with some maintenance.

A bank account statement and a snapshot of the balance for the receivership

estate are attached as Exhibit 5.

## ACTIVITIES

Detailed time sheets are attached in Exhibit 6, which provide granular detail as to

the activities of the Receiver. For brevity, the main activities of the Receiver are set forth

below:

| Activity | Date Period | Discussion |
|---|---|---|
| File Order Staying Eviction | Appointment - Ongoing | The eviction proceedings have been stayed by the Court in Hawaii. |
| Collecting Receivables and selling existing inventory. | Ongoing | The Receiver and his staff have worked to collect receivables and  with the help of certain former employees will sell the remaining warehoused product through established channels. |
| Interactions with creditors | Ongoing | Emails, video meetings, and calls with the estate's many creditors. |
| Prepare to resume operations | End of April – ongoing | As described in the "site visit" section below. |

## LANDLORD

Hawaiian Brewery Development Co. Inc. filed a motion to intervene on April 26,

2024.

The Landlord has been difficult for the Business.  Despite rent being paid by the creditor Leonite Capital ("Leonite") since December 2023, the Landlord has insisted that a technical default of the lease exists, specifically due to a royalty arrangement and a power purchase agreement ("PPA") that is purportedly tied to the lease.

The Receiver conducted a site visit and was able to speak directly with Mr. Marcus Bender, owner of the Landlord, on Monday, April 22, 2024, while the Receiver was at the location of the facility in Hawaii.  The conversation was civil.  The Receiver believes that it is vital that the estate continue to pay the monthly rent and to bring current obligations under the power purchase agreement with the Landlord.  The Business is valuable with the lease in place and the Receiver is committed to keeping the rent current with financing from Leonite.

## SITE VISIT

The Receiver initially managed the estate remotely and has had great cooperation from the Business's prior employees.  This has been efficient from a logistical and cost basis; indeed, the sales and administrative team for the Operating Entity are located in Hawaii, California, and Florida.

The Receiver traveled on Sunday, April 21, 2024, to Hilo and met Ken Tokuda, plant manager, at the facility at approximately 10 AM on April 22, 2024. With the power out, the Receiver purchased two flashlights to inspect the location and its equipment. The

Receiver took photos and videos of the location and the equipment. Selected photos are attached as Exhibit 7.[1]

The location of the Business is in a general state of disrepair but can be revitalized relatively easily. Because of the rainy weather and climate conditions, the grass is high, and some vegetation has begun to grow in the gutters and on the building's roof. The roof needs repair due to numerous leaks.

The bottle creation equipment ("Blower Setup") is in need of a full overhaul, the cost of which has been estimated at $66,000.[2] The bottling equipment, though old, with some maintenance, appears to be operational and could be used efficiently to produce more product.

Creating bottles is a crucial part of the process since the Operating Company has its own custom bottle, which is created by heating the raw material and blowing air through a device. A before-and-after photo of the bottle creation process is attached as Exhibit **. In its finished state, the bottle resembles a champagne bottle.  The Receiver will bring one of the bottles (empty) and a sample of the bottle's raw material, to the upcoming hearing.

---

[1] The Receiver primarily took video on his site visit, and the images were extracted from those video shots. The Receiver apologizes for image quality, and will provide full video images to any interested party or this Court upon request.

[2] On April 25, 2024 the Receiver spoke with Starr Company, who has maintained the Blower Setup for many years. The representative indicated that though the machinery is old, it can, post overhaul, still work efficiently.

The Business presently stores a large amount of raw materials for bottling on site. The Business has sufficient raw materials to ramp up production once the equipment is operational.

The Receiver intends to visit the location again with any interested parties and/or their counsel in May 2024 and will likely visit periodically, assuming operations are relaunched.

During the April site visit, the Receiver hired Hilo Locksmith, LLC, to change the locks on the location. The only parties with keys prior to the visit were Ken Tokuda and the Receiver.  While working on the lock change, the locksmith was approached by two employees of Waiakea Water (so identified by the company matching t-shirts they were wearing), who were initially threatening and intimidating.

The Receiver served Dustin, one of the two men, with a copy of the appointment order in the present matter and indicated he was clearly authorized to be on location. Dustin then called Marcus Bender, the Landlord's owner, and handed the phone to the Receiver.

The Receiver explained to Mr. Bender that he was there to replace the locks and provide him with a key.  The Landlord's attorneys had many communications with the undersigned demanding keys.  After completing the re-key, the Receiver went to a local hardware store to produce a spare set of keys for the Landlord and was instructed by Mr. Bender to leave them with Dustin, whom he described as one of his employees. This was completed, and the site visit ended at approximately 2 PM.

**FINANCING ACTIVITIES**

Restarting activities will require substantial funds. The Receiver approached Leonite as well as other parties about providing financing. Leonite has indicated it will fund the restart of operations and has negotiated a $500,000 receiver certificate note that the Receiver expects will be executed very soon.  Leonite has also indicated a willingness to provide additional funding if needed.

**NEXT ACTIONS**

The Receiver's next actions will involve payments to the utility company, bringing the Landlord current on the power obligation, funding payroll for operational staff, paying for equipment maintenance and other expenses required to restart the bottling operation. The Receiver will seek to open a claims period if and when the operational business is functioning.  The Receiver typically does not begin a claims process until there is a plan in place to pay creditors as an early claim process is inefficient.

**LODESTAR FACTORS**

In support of his fee Application, the Receiver, Robert Stevens, respectfully directs this Court's attention to those factors generally considered by courts in awarding compensation to attorneys for services performed in connection with the administration of a receivership estate, which are equally applicable to the Receiver himself.   The Receiver is authorized to pay his counsel but also submits counsels' fees for approval and to provide the parties with an opportunity to object.  The Receiver further notes that the Tenth Circuit approves a lodestar calculation without detailed recitation of the factors known as the *Johnson* factors.  "The Supreme Court's very recent decision in *Perdue* only

confirms our reluctance to disturb a presumptively valid lodestar fee determination on the basis of a conclusory objection that *Johnson* factors were not discussed." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010).

Nonetheless, the Receiver submits that the *Johnson* factors favor approval of his fees and the fees of his counsel.  The twelve factors relevant to the determination of a reasonable attorney fee are :"(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Francia v. White,* 594 F.2d 778, 784 (10th Cir.1979) (summarizing factors in appendix to opinion). While "not saying that all of these need be considered," this court "commend[ed] them to the trial court for its use in arriving at a fair and reasonable [fee]" in *Francia, id.* at 782, and we have referred to them for guidance on various occasions since." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1103 (10th Cir. 2010) citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.3d 714, 717–19 (5th Cir.1974).

Briefly, as to the time and labor required, the Receiver notes that obtaining financing to fund the estate has been challenging.  In addition, the Business had an adversarial relationship with its Landlord that the Receiver inherited.  The investors,

creditors and landlord are raising complicated legal issues that take time and legal counsel to resolve.  The Receiver's own experience in other matters has been vital to the efforts to restart the operations given the limited resources.

All professionals involved in this case are well aware that their activities incur substantial expenses. They are also mindful that they are being paid from funds that are assets of the Receivership Estate (which includes investor monies). The Receiver and other professionals have made a concerted effort to be good stewards of the Receivership Estate's assets.

As to the other factors, receivership law is a specialty and the Receiver's counsel are all very experienced attorneys with expertise and experience representing receivers. The Receiver's counsel also have many years' experience in complex commercial matters and litigation.  The Receiver must devote substantial time to this estate and has foregone other opportunities.  The hourly rates charged by the Receiver and his counsel are either market or below the customary rates charged by others.  Indeed, saving hundreds of dollars an hour by billing professionals is a prime reason this receivership was filed in the District of Colorado.

As to rates, the following professionals have performed services on behalf of the receivership at reasonable rates.  The Receiver charges $450 an hour.  Mr. Stevens has served as Receiver in numerous cases across various jurisdictions, including Nevada, Colorado, Florida, New York, and Wyoming, and is a member of NAFER, the National Association of Federal Equity Receivers.

Jodi Stevens works in this matter for the Receiver.  She has served as a Wyoming Receiver and owned and operated regulated entities from 2001-2010, acting as CEO for two SEC-registered professional transfer agents. Ms. Stevens oversees compliance, employee operations, and collections.

The following attorneys at Robinson Waters & O'Dorisio perform legal work for the Receiver.  Tracy Ashmore, $425/hour, is a shareholder who has more than 20 years of experience handling complex cases in the state, federal, and appellate courts including receivership cases.

Jeffrey Bartholomew, $400/hour, is a shareholder who has represented numerous startup and emerging companies in manufacturing, service, and technology-driven industries and has financing expertise.  Mr. Bartholomew's transactions include private and public equity offerings, venture capital financing, mergers and acquisitions, licensing of intellectual property and joint ventures.

Daniel J. Block, $375/hour, is a shareholder with over 30 years of experience as an attorney, including business transactions (including business entity formations; purchases and sales of businesses; and contract drafting, negotiation and review), and employment law and employee relations (such as preparation or revision of employee manuals; preparation of employment agreements and independent contractor agreements; and advising employers and employees on employment law and policies, employment terminations and covenants against competition).

The Receiver has also agreed to pay Nathaniel Hija, who represents the Business in the Hawaii litigation for any matter that comes up in the Hawaii litigation.  In addition,

the Receiver has retained Geoge W. Van Buren with Van Buren & Shimizu LLP as local

counsel for the Receiver in Hawaii.

## FEES AND EXPENSES

The Receiver seeks an order approving fees and expenses, as allowed under the

appointment Order dated February 1, 2024 for:

1. The Receiver's hard costs in the amount of $11,266.75;

2. The Receiver's fees, 120 hours at $450/hour ($100/hour for travel time) for a total of $45,475;

3. Receiver's staff, 38 hours at $250/hour, for a total of $9,450;

4. Attorneys at Robinson Waters, & O'Dorisio for legal fees ($37,915) and costs ($1,016.60) in the total amount of $38,931.60;

5. Nathaniel Higa, 3.6 hours at $445 an hour for total fees of $1,602, plus taxes ($7j5.45) and costs advanced ($193.55) for a total of $2,037.77; and

6. George W. Van Buren, $400/hour with total legal fees and costs in the amount of $1,801.05.

The undersigned has copies of detailed legal invoices that can be provided to the

Court for *in camera* review upon request or, to the parties, with redactions for privilege,

should the Court so direct.

## CONCLUSION

The Receiver respectfully requests an Order approving the foregoing report and

approval of the administrative fees and costs incurred to date as set forth herein.

Respectfully submitted this 1st day of May 2024.

ROBINSON WATERS & O'DORISIO, P.C.

By:  */s/ Tracy L. Ashmore*
Tracy L. Ashmore
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
E-mail:  tashmore@rwolaw.com
*Attorney for Receiver*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 1, 2024, a true and correct copy of the foregoing RECEIVER'S STATUS REPORT NO. 1 was filed and served via CM/ECF to all counsel of record.

*s/ Holly Stahl*
For Robinson Waters & O'Dorisio, P.C.