

# LUNG ROSE VOSS WAGNILD

Attorneys at Law

Topa Financial Center
700 Bishop Street, Suite 900
Honolulu, Hawaii 96813

P.O. Box 1760
Honolulu, Hawaii 96806

Tel: (808) 523-9000
Fax: (808) 533-4184
E-mail: mail@legalhawaii.com
www.legalhawaii.com

Harvey J. Lung
Crystal K. Rose
Bruce D. Voss
Craig P. Wagnild
Ryan H. Engle
Michael C. Carroll
Adrian L. Lavarias
Sarah M. Love
Matthew C. Shannon
Christian D. Chambers
Grant F. Allison

John M. Blanchard
Suhyeon Burns
David E. Case
John D. Ferry III
Kira J. Goo
Katherine T. Hiraoka
David A. Imanaka
Jai W. Keep-Barnes
Sharon Paris
Ciarra B. Sapigao
Ivana P. Tran

A Partnership of
Law Corporations

Jason N. Baba
(1957-2001)

April 4, 2024

<u>Via E-mail - zr@raskinlegal.com</u>

Zvi Raskin, Esq.
1 Hillcrest Center Drive, Suite 230
Spring Valley, NY 10977

    Re: Leonite Fund I, LP v. Hawaiian Springs, LLC and
       <u>HSW Holdings Corporation, Civil No. 1:24-cv-00149-NYW-STV</u>

Dear Mr. Raskin:

    We are in receipt of your letter dated March 31, 2024, in which you attempt to explain and rebut the notion that the United States District Court for the District of Colorado ("USDC CO") does not have subject matter jurisdiction over the above-referenced matter because there was no complete diversity of citizenship between the Plaintiff and all of the Defendants in the case. For the reasons set forth below, we remain highly skeptical of Leonite's actions and its representations to the USDC CO, and remain unconvinced that there was complete diversity of citizenship at the time Leonite filed its Complaint on January 18, 2024.

    First, the copy of the Limited Liability Company Agreement of Hawaiian Springs, LLC, which you describe as the operating agreement ("Agreement"), is hardly dispositive. While it purports to predate the Complaint, it does not establish who the members of Hawaiian Springs, LLC ("HSW") were on January 18, 2024—the date the Complaint was filed. If the Agreement is indeed authentic, it was executed three and one-half years before the Complaint was filed. We both know that LLC members can come and go and there is no reason to believe—apart from your unsupported assertions—that the members on June 16, 2020, were the same as those on January 18, 2024. If the members were the same, we expect you would be able prove it with documentation more current than the Agreement.

    Second, the Agreement is suspect on its face. The Agreement states that it is made and entered as of June 16, 2020, yet on the very same page, under Recitals, the Agreement describes events that occur nine months later—an impossibility under the laws of physics as well as being a legal incongruity. The third and fourth Recitals are not reciting events that have occurred leading up to the Agreement—which is what recitals typically do—but instead describe events yet to occur as of the date of the Agreement's effectiveness. Whatever your explanation

1288906.1

EXHIBIT 3

may be as to this internal inconsistency in the Agreement, there is no doubt that, combined with the other observations contained in this letter, the validity of the Agreement, the accuracy of the sequence of events it purports to describe, and the credibility of the statements in your letter, all appear highly questionable.

Third, the "mea culpa" contained in your letter is also not credible. A Yale law school graduate who has been practicing for approximately 36 years does not create a document as important as the Unanimous Written Consent of the Members and Sole Manager of Hawaiian Springs, LLC ("Written Consent") and absent-mindedly list Leonite as a "member." Your own Linked-In page describes you as follows:

> I am a C-Suite-level Yale-educated corporate counsel with exceptional breadth and depth of legal experience and expertise, concerning a wide array of legal, corporate and commercial matters. With more than 25 years as General Counsel and Corporate Secretary of public and private tech companies, including both startups and mature businesses, I offer a demonstrated track record as a creative problem solver skillfully addressing a multitude of legal challenges and opportunities, a trusted advisor to senior management and the Board of Directors, a key resource in crisis situations, and an entrepreneurial and results-oriented team player.

That does not describe an attorney who would mistakenly insert a signature line in a Unanimous Written Consent of the members of an LLC to demonstrate a purported consent of a lender to the actions of HSW.

Fourth, the excuse you give for making the aforementioned mistake is that there was a "significant time urgency" and that you "rushed to circulate the document and failed to clarify Leonite's role—which is a lender and not a member." What time urgency? The Written consent was signed by the members and effective as of December 26, 2023—a full twenty-three (23) days before the Complaint was filed on January 18, 2024. Twenty-three days is more than enough time to make a correction to a document that is and was intended to be a representation to the USDC CO of the members of the LLC. Without something more definite than your say so, we contend there was no urgency, and there was no error in the Written Consent.

Fifth, even if your professed mistake was credible—which it is not—you do not explain why and how Avrohom Geller, the CIO of Leonite, signed the Written Consent as a "member." Surely, Mr. Geller, the head of a sophisticated lending organization, would know whether Leonite had taken an equity interest and become a member of HSW. The only logical explanation for his signing is that he understood that Leonite was a member of HSW at the time

Zvi Raskin, Esq.
April 4, 2024
Page 3

the Written Consent was prepared, or because he believed that because he was so advised by you.

       Sixth, that Leonite was actually a member of HSW at the time of the Written Consent is hardly far-fetched or unusual.  It makes perfect sense that Leonite, having infused $1.5 million in capital into HSW, required that it receive an equity (membership) interest and role in the LLC going forward, as a part of its security and so that it could monitor and safeguard its investment.  In fact, Section 6.2 of the Agreement mandates the maintenance of a schedule reflecting, among other things, the members of the LLC, the Capital Contributions made by them, and a Capital Account Balance.  Section 6.2 also requires that such schedule, designated in the Agreement as "Exhibit B," "shall be amended from time to time . . . to reflect . . . the admission of ___additional Members___ of the Company, ___additional Capital Contributions___, . . . and changes in the ownership of Units."  (emphasis added).  For Leonite to make a capital contribution of $1.5 million and also become a member of the LLC is wholly consistent with the Agreement, which would explain why Leonite was listed as a member of the HSW in the Written Consent.  If you continue to contend that Leonite was never a member of the LLC, then please produce to us ___all___ versions of the schedule designated as Exhibit B from 2020 through the present so that we can verify your contention.

       Finally, your assertion that Leonite was not a member of HSW is undermined by another document it appears that you prepared:  the Senior Secured Promissory Note ("Note").  As consideration for the $1.5 million capital contribution, Leonite took an equity position in the LLC.  Article III of the Note evidences the conveyance of an equity interest in HSW to Leonite.  Although the Note refers to Leonite receiving "Common stock" or "Common Shares" of HSW (which generally applies to corporations, not LLCs), we expect that this was simply a carry-over from a prior transaction in which a corporation and not an LLC was the borrower, and that the note from that transaction was used as a template for the HSW transaction.  That misnomer aside, the clear intent of Article III is to give Leonite an equity interest in HSW, which in this case would be a membership interest.  In fact, Section 3.2 of the Note states as follows:

> 3.2    Equity Interest.  Upon the advance of the first Tranche by Holder to the Borrower, Borrower shall issue to Holder a number of shares of Borrower's Common Stock equal to 9.99% of the number of Common Shares issued and outstanding on a fully diluted basis as of the Issue Date of this Note (the "**Equity Interest**").

(emphasis in original).  Accordingly, the Note contradicts your assertion that Leonite was purely a lender and not a member.  The Note demonstrates that Leonite was issued an equity interest in HSW and as such became a member which was then reflected in the Written Consent, acknowledged and signed by Mr. Geller.

1288906.1                                                     EXHIBIT 3

Zvi Raskin, Esq.
April 4, 2024
Page 4

       So, in response to the penultimate paragraph in your letter, no, your letter does not resolve our concerns. To the contrary, your denial and explanation given the documents you have submitted to the Court only heightens our concerns and strengthens our belief that there was no complete diversity at the time Leonite filed its Complaint, and that the USDC CO does not have subject matter jurisdiction to entertain this action. Moreover, our concerns are based solely on the limited documents Leonite filed with the Court. We suspect that if we were permitted to conduct full discovery on this matter, there would be a good chance that there would be additional documentation to support our position or at least substantially compromise Leonite's position. We chose to give Leonite the opportunity to avoid having the USDC CO investigate whether Leonite was forthright in its prior representations to the Court. Thus far, Leonite has only created more, not less, suspicion concerning the propriety of basing its action on diversity jurisdiction. Unless and until we receive incontrovertible proof—not out-of-date agreements and schedules, and not self-serving attorney statements—we have no reason to forebear on challenging the issue of diversity jurisdiction with the Court. We will afford you an additional seven (7) calendar days from the date of this letter within which to provide us with such incontrovertible proof.

       Thank you.

       Very truly yours,

       LUNG ROSE VOSS & WAGNILD

       By _____
          Harvey J. Lung
          Attorney at Law, A Law Corporation
          Its General Partner

HJL:sam
cc:   Client
      Tracy Ashmore, Esq.
      George Van Buren, Esq.
      Nathaniel Higa, Esq.