**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-00149-NYW-STV

**LEONITE FUND I, LP**,

Plaintiff,

v.

**HAWAIIAN SPRINGS, LLC** and **HSW HOLDINGS CORPORATION,**

Defendants,

and

**HAWAII BREWERY DEVELOPMENT CO., INC.,**

**Defendant.**

---

**RECEIVER'S RESPONSE TO HBDC'S MOTION FOR RELIEF FROM STAY and SUPPLEMENT TO MOTION FOR RELIEF FROM STAY**

---

Robert L. Stevens, the Receiver, responds to Defendant Hawaii Brewery Development Co., Inc.'s ("Landlord") motion for relief from stay and supplement to said motion as follows:

## INTRODUCTION

Landlord's filings fail to advise this Court of the most important fact governing the determination of its motion: Landlord is *benefitting* from the receivership and will continue to do so. Prior to the Receiver's appointment, Landlord was current on lease payments but was owed sums under a power purchase agreement. Since the Receiver's appointment, any and all late payments have been brought current. Additionally, power

to the property has been restored at a not inconsiderable expense. Moreover, the real and personal property in the estate is being repaired and security to the property has been enhanced.

Landlord has misunderstood an important aspect of this receivership, in spite of numerous telephone calls with its counsel explaining key facts. Hence, Landlord's statement to this Court that the Receiver is "*not*" working to resume operations of Hawaiian Springs (the "Company") is incorrect. The Receiver is restoring operations and has already collected revenue in the amount of $127,518.33, an amount in excess of administrative costs. The Receiver's ultimate goal is to sell the Company. However, unless operations are resumed and revenue from operations become steady, the Company will not be as attractive an acquisition target as it will be with a steady flow of revenue. The Receiver is charged with maximizing the value of the estate and the Receiver is competent to fulfill his mandate which includes ensuring that the Company is operational and continuing to generate revenue.

Landlord is also wrong to assume that the Receiver has used up all of the Company's cash. The Receiver is drawing on borrowed funds but is now also earning revenue for the Company and anticipates that all activities of this Receivership will, within months, be self-supporting from the Company's revenue.

## ARGUMENT

The Receiver addresses the legal arguments made by the Landlord in its motion and supplement in the order he believes are likely most important to this Court.

### A. The global stay is lawful and is an important feature of any receivership.

The Landlord's challenge to the global stay in this Court's appointing Order is based on the incorrect premise that the stay violates the federal anti-injunction act, 28 U.S.C. § 2223 (the "Act"). Tellingly, the Landlord has not cited a single case that holds that a global stay in a receivership violates the Act and law in this district and throughout the country confirms the importance and legal validity of a receivership global stay. Courts explain:

> Under the Anti-Injunction Act, a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. That is, federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. **Guided by principles of federalism, we find a threat to the court's jurisdiction where a state proceeding threatens to dispose of property that forms the basis for federal in rem jurisdiction.**
>
> **The district court exercises jurisdiction over the receivership estate**. … When in 2009 the district court took the receivership estate into its custody, the res was as much withdrawn from the judicial power of the other courts, as if it had been carried physically into a different territorial sovereignty. The Plaintiffs-Objectors' suits in state court implicate that same res.

*Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 902–03 (5th Cir. 2019) (emphasis supplied) (internal citations omitted).

No doubt exists that governing law empowers a receivership court to stay any proceeding, in federal or state court, that involves receivership entities or receivership assets. *SEC v. Stanford Int'l Bank Ltd.*, 424 Fed. Appx. 338, 340 (5th Cir. 2011) ("It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to [receivership] actions.").

Indeed, the Act specifically authorizes a stay where, as here, it is necessary and in aid of this Court's jurisdiction. Every case addressing the issue consistently explains that a global stay is important to this Court's jurisdiction over the receivership estate. *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372–373 (5th Cir. 1982) (federal courts supervising equitable receiverships have "broad powers and wide discretion to determine the appropriate relief"); *SEC v. Kaleta*, 530 Fed. Appx. 360, 362 (5th Cir. 2013) (same). "These powers include the court's inherent equitable authority to issue a variety of 'ancillary relief' measures." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir.1980) (footnote omitted). "Such 'ancillary relief' includes injunctions to stay proceedings by non-parties to the receivership." *Kaleta*, 530 Fed. Appx. at 362; *see also Wencke*, 622 F.2d at 1368–72 (affirming district court's order to stay all persons, including nonparties, from continuing with any proceedings against receivership entities).

This Court has, and properly exercised, its authority to issue a stay that includes the power to stay proceedings over real estate. *See e.g., United States v. Fairway Capital Corp.*, 433 F. Supp. 2d 226, 234 (D.R.I. 2006) ("Claimant's Motion for Summary Judgment was stayed by this Court's March 13, 2000 Receivership Order appointing the Receiver and imposing a stay of the Eviction Action. On February 3, 2003, Claimant filed a Motion for Relief from the Receivership Stay Order so that the Eviction Action could continue before the Territorial Court. On September 30, 2003, this Court issued a Bench Order denying the Claimant's Motion to lift the stay."); *United States v. JHW Greentree Capital, L.P.*, 3:12-CV-00116 VLB, 2014 WL 2608516, at *3–4 (D. Conn. June 11, 2014) ("A district court may impose a litigation stay on a non-party to a receivership as part of its

inherent power as a court of equity to fashion effective relief. *S.E.C. v. Byers,* 609 F.3d 87, 91 (2d Cir.2010) (citing *S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir .1980).

This Court's Order serves the purposes of a receivership, essentially freezing adverse actions against the receivership estate while the finances are reconciled. "[T]he purposes of a receivership are varied, but the purpose of imposing a stay of litigation is clear. A receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010); *In re Morris & Rice*, 258 F. 712, 715 (D. Mass. 1919) ("Eviction pending the application for the appointment of a receiver, and with nobody to represent the creditors, would hardly have been permitted.").

A stay is common in receiverships in order to assure judicial efficiency. As Judge Weinshienk explained for the federal District of Colorado:

> Federal Courts have the power, if necessary, to take control over an entity and impose a receivership free from interference in other court proceedings. *See S.E.C. v. Wencke,* 622 F.2d 1363, 1372 (9th Cir.1980). Upon imposition of a receivership, all property in the possession of the debtor passes into the custody of the receivership court, and becomes subject to its authority and control. In the exercise of its jurisdiction over the debtor's property, the court has power to issue injunctions and all other writs necessary to protect the estate from interference and to ensure its orderly administration. *Id.* at 1370–71.
>
> This Court has the power to enjoin particular actions or to issue a "blanket stay" order effective against all persons, including non-parties, of all proceedings against the receivership entity in order to prevent interference with administration of the receivership. *Id.* at 1368 (affirming the broad power of a federal district court to issue stays effective against all persons and non-parties, of all proceedings against the receivership entities where

> necessary to protect the federal receivership); *SEC v. United Financial Group,* 576 F.2d 217, 220 (9th Cir.1978) ("When the receivership court takes jurisdiction of the debtor's estate, it has power to issue orders barring actions which would interfere with its administration of that estate"); 2 *Clark on Receivers* § 625.2 ("appointing court frequently issues a blanket injunction against interference with the court's possession and control of the res"). The power of a federal court to enter such stays does not depend on specific congressional authorization. *Wencke,* 622 F.2d at 1371. Rather, **this authority is based upon the inherent and broad equitable powers of federal courts to protect its jurisdiction over the property for which it has taken possession**. *Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970).

*Eller Indus., Inc. v. Indian Motorcycle Mfg., Inc.*, 929 F. Supp. 369, 372-373 (D. Colo. 1995) (emphasis supplied).

In addition to promoting judicial efficiency, a blanket stay protects the rights of all creditors equally.

> We are clear that, as a general, if not a universal rule, all creditors seeking to assert equitable remedies against assets of which the court has taken charge by a receiver should become parties by intervention or otherwise to the cause in which the receiver was appointed, and prosecute their remedies *in that cause alone.* Creditors who stand out may be allowed to prosecute their legal remedies against the assets, if they can make them available; but, if they have to invoke the exercise of equitable powers by the same court, their legal remedies are not available, and they are in no condition to proceed by separate and independent actions.

*Id. See also S.E.C. v. Wencke,* 622 F.2d 1363, 1369 (9th Cir. 1980) ("The power of the district court to issue a stay, effective against all persons, of all proceedings against the receivership entities rests as much on its control over the property placed in receivership as on its jurisdiction over the parties to the []action. The district court took control over the properties in question when it imposed the receivership and appointed [the receiver] as receiver to manage those properties. The blanket stay was found by the district court

necessary to achieve the purposes of the receivership. We conclude the district court had the power to enter the order.").

The Receiver notes that contrary to Landlord's argument, this Court *is* the first court to take possession over the property at issue.

**B. Landlord is not entitled to relief from stay.**

The Receiver notes that the Landlord's procedural irregularities are creating a large expense to the receivership and submits that the expense is unwarranted. Initially, Landlord should, like any other party in a federal case, follow the rules. Landlord's claim that it is filing as a "precaution," to "maximize judicial efficiency" and to somehow conserve "resources," does not ring true. Landlord is doubling the expense of these proceedings by taking inconsistent positions as to this Court's jurisdiction. That said, the Receiver submits that the prior briefing shows that this Court has jurisdiction.

The Landlord is not entitled to relief from stay to pursue its eviction against the Company for numerous reasons, the foremost being that there is no uncured payment default and no harm at all to the Landlord as a result of this receivership. In addition, Landlord's attempt to take the entirety of the receivership's assets for itself undermines the purpose of a receivership which is to maximize the value of the receivership estate and to treat all creditors equally.

**1. Landlord ignores key lease provisions.**

Throughout its motion, Landlord relies on sections of the Lease to support its arguments, but Landlord consistently omits the key tenant-friendly lease provisions that undermine its position. This Court can observe that the Landlord has selectively quoted

from the Lease and its omissions are telling on two crucial points: (1) whether the Lease prohibits assignment; and (2) whether the Lease contains a reasonable cure provision.

As to the assignment issue, the Lease does *not* prohibit assignment. Instead, the Lease states, in relevant part:

> Lessee may not, without the prior written consent of Lessor, **which consent (except as hereinafter provided) shall not be unreasonably withheld, delayed or conditioned**, mortgage or otherwise encumber Lessee's leasehold interest in the Premises, nor assign or sublet or part with possession of the whole or any part of the Premises and any attempt to do so without the required approval shall be void and Lessee will be in default under this Lease.

*See* Lease and Assignment, attached hereto as Exhibit 1, at ¶ 11 (emphasis supplied). Because Landlord knew the Company was being funded by Leonite, and because Landlord has and continues to accept rent from Leonite, Landlord has no reasonable objection to Leonite's interest. At most, the Company's assignment to Leonite is a minor breach if it is a breach at all. Under Hawaii law, the assignment to Leonite does not justify termination by Landlord because it is not a material breach of the Lease. The Receiver further notes that the Landlord did not raise any issue with Leonite's interest in the Hawaiian lawsuit.

As to any rental payments having been paid late (all payments are now current), Landlord again ignores the applicable Lease provision providing the Company a reasonable time to cure. The Lease states, in relevant part:

> If Lessee shall … fail to pay the rent when the same shall fall due and payable, and either of such failures continues for thirty (30) days after written notice thereof from Lessor, … Lessor may at once enter into and retake possession of the Premises and any improvements thereon[,] Provided however, and notwithstanding the foregoing, if the default cannot reasonably be cured within such thirty (30) days, **Lessee shall be allowed**

> **such longer time to cure the default as may reasonably be required,** provided that Lessee commences the cure within such thirty (30) days.

Lease, Exhibit 1 at ¶ 19 (emphasis supplied).

**2. There is and was no material default in the Lease by the Company.**

In addition to ignoring the actual terms of the Lease that favor the Company, Landlord insists in its filing to this Court that there was a prior "material" breach of the Lease by the Company. Importantly, there has been no judicial finding that the Company breached the Lease at all, much less that there has been a "material" breach. The few late payments and the assignment do not, under Hawaii law, qualify as material breaches. Instead, late payments have consistently been *rejected* by Courts in Hawaii as a basis to terminate any lease given the disproportionate forfeiture that a tenant would suffer as a result of a delayed payment. Here, the forfeiture would be particularly egregious because the Lease term, with an extension option, continues for another **seventy** years, through September 30, 2094.

Moreover, Leonite's assistance did not change the purpose of the Lease and the Receiver now continues to run the business the same way and for the same purposes as did the Company.

Under well-established Hawaii law, a landlord's right to cancel a contract for breach is not unlimited. Rather, any alleged breach must be material in order to justify the forfeiture that would result from termination of a multi-decade commercial lease. *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997). Equity prevents the recission of contract based upon a mere breach of contract that is not so substantial and fundamental as to the defeat the purpose of the agreement. *Aickin v. Ocean View Invs.*

*Co.,* 84 Haw. 447, 935 P.2d 992 (1997). For a court to rescind a contract, an alleged breach must go to the root of the contract, it must be material. *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997). Where a breach is not material, equity requires that the court uphold the heart of the contract. *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997).

"A material default or breach does not result simply because a party to a contract violates one of the agreement's provisions". *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997). Courts are very reluctant to allow a party to terminate the contract for a breach where it is not manifestly evident that the breach was material, as "the potential harshness inherent in abruptly declaring a lease at an end, especially where the party in breach stands to suffer substantial loss from its termination[.]" *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997) (citing *Material Breach of Lease,* 54 A.L.R.4th 595, 603-04 (1987)). This reluctance has "resulted in the widely accepted 'material breach' rule. Nearly all courts hold that, regardless of the language of the lease, to justify a cancellation, forfeiture, or other premature termination of a lease, the breach must have been 'material,' 'serious,' 'substantial,' or the like…" *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997) (citing *Material Breach of Lease,* 54 A.L.R.4th 595, 603-04 (1987)).

Hawaii Courts have consistently held that failure to timely pay rent is not a material breach. *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997). In determining whether or not a breach is material, Hawaii courts rely on the language of the Lease itself. *Aickin v. Ocean View Invs. Co.,* 84 Haw. 447, 935 P.2d 992 (1997).

Additionally, if an alleged breach is timely cured, the non-breaching party is not entitled to terminate the Lease. *Hawaiian Ass'n of Seventh-Day Adventists v. Wong,* 130 Haw. 36, 305 P.3d 452 (2013).

Even where a breach may be material, "[e]quity does not favor forfeitures, and where no injustice would thereby be visited upon the injured party, equity will award him compensation rather than decree a forfeiture against the offending party." *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978). Recission of a contract is not an appropriate remedy "where the lessee's breach has not been due to gross negligence, or to persistent and wilful [*sic*] conduct on his part, and the lessor can reasonably and adequately be compensated for his injury." *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978). Mere negligence is not sufficient to merit the recission of a lease agreement. *Jenkins v. Wise,* 58 Haw. 592, 574 P.2d 1337 (1978). Where the lease remains in effect "and the lessor received the rent for which it has bargained, it suffered no loss or deprivation of use and occupation of the premises and payment of the rent placed it in the same position, in this respect, as it would have been in has the lessee not [breached]." *Food Pantry v. Waikiki Business Plaza, Inc.,* 58 Haw. 606, 575 P.2d 869 (1978).

**3. Landlord does not meet the factors for relief from stay.**

"When a district court creates a receivership, its focus is to safeguard the assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary." *S.E.C. v. Vescor Cap. Corp.*, 599 F.3d

1189, 1194 (10th Cir. 2010). The Tenth Circuit explains that to obtain relief from stay, the Court applies a three-factor test:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;
>
> (2) the time in the course of the receivership at which the motion for relief from the stay is made; and
>
> (3) the merits of the moving party's underlying claim.

*S.E.C. v. Vescor Cap. Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010). To determine Landlord's motion for relief from stay, this Court is instructed to balance the interests of the receiver and the moving party. *Id.* at 1196 ("in a receivership-imposed stay, we balance the interests of the receiver and the moving party.").

**(a) The first factor, preservation of the status quo, supports continuation of the stay.**

Landlord's argument that the status quo will be preserved if the stay is lifted lacks merit. First, Landlord is incorrect that operations are stalled. The Receiver commenced the process of restoring operations as soon as he was appointed and, as this Court and all parties know, power has been restored, employees have been hired, and necessary equipment repairs are underway. In addition, and contrary to Landlord's statements, sales of inventoried product are ongoing, and sales of new product are set to recommence soon. If the stay is lifted only for Landlord to pursue its termination action in Hawaii, this change will require expenditures of funds in litigation in Hawaii for an effort that is unlikely to be resolved in Landlord's favor because the lease forfeiture Landlord seeks is not supported by controlling Hawaii precedent.

More importantly, it is clear that Landlord hopes to take the property at issue entirely out of the receivership. Because this is the real purpose of Landlord's motion, this factor unequivocally favors denial of Landlord's motion. Tenth Circuit law on this point is black and white:

> We agree with the receiver that to remove the [] properties from the receivership will upset the status quo, which attempts to preserve the assets of the defrauded investors. *See SEC v. Byers,* 592 F.Supp.2d 532, 537 (S.D.N.Y.2008) (rejecting movants' attempts to challenge an injunction imposed involving a Ponzi scheme, applying *Wencke,* and concluding that "the best way to maintain the status quo is to permit [the receiver] to carry on with his investigation"). We hold that this *Wencke* factor weighs in favor of the receiver.

*Vescor Cap. Corp.*, 599 F.3d at 1197.

**(b) Landlord suffers no injury if the stay is enforced.**

As noted previously, Landlord will not suffer any injury at all, much less "substantial" injury," if the stay is enforced. The injuries articulated in Landlord's motion are not injuries at all. First, Landlord claims that it is prevented from asserting its "vested rights under the terminated lease." The fact that Landlord cannot assert a claim that it is unlikely to win is not a substantial injury. Moreover, whether or not Landlord has grounds to terminate the Lease has not been established by any Court. As set forth above, under Hawaii law, the Landlord will almost certainly fail to obtain any such finding even if the stay is lifted.

Typically, when a party like Landlord seeks relief from stay, it is because the value of that party's property is being diminished. Here, the Receiver is enhancing the value of the property by repairing it, securing it, and recommencing the operations of the water company. If, as in many cases, Landlord was not receiving rent, *then* Landlord could

have a valid basis for seeking relief from stay. Here, on the contrary, Landlord is receiving tens of thousands of dollars as a direct result of the Receiver's diligence.

Landlord's second supposed injury is articulated as: "the Receiver will continue to dissipate, use, and imperil the assets of HSLLC and Holdings, perhaps to no useful end …" *See* Landlord's Motion at p. 8. The Receiver notes that the expense of the receivership does *not* harm the Landlord at all. Leonite is the party funding the receivership until the Company becomes self-sustaining. The alleged harm is not a harm to Landlord in any manner.

In sum, the notion that Landlord's property rights are being ignored is simply not accurate. Leonite, and the Receiver, have proven their commitment to paying the Landlord timely, and in full, pursuant to the Lease and the related agreements.

**(c) Landlord's motion is too early.**

Landlord's motion is being filed before the Receiver has had the opportunity to turn the receivership estate into a profitable ongoing operation. Unless and until it becomes apparent that the receivership estate cannot meet the Landlord's obligations under the Lease, Landlord's motion should be denied on this basis.

> [A] receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant. Very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties.

*Id.* at 1198. Landlord's view that the Receiver has already completed the most important aspects of the receivership is not accurate. The Receiver's court-ordered duty is to maximize the value of the estate so that all creditors can be treated fairly. Interrupting

the receivership at this stage, as operations are set to resume, is unfair to all of the creditors and will prevent the Receiver from fulfilling his Court-mandated responsibilities.

**(d) Landlord's lawsuit is not meritorious.**

Landlord's entire argument as to the merits of its now-stayed eviction case in Hawaii is that the Company made some late payments. The Landlord ignores that the Company made every effort in its power to make its rent payments and that all rent was in truth current well before the Landlord moved for summary judgment. Because the Lease allows for an extended "reasonable" cure period, and because the law in Hawaii does not support lease termination for late payment, Landlord's arguments to the contrary are inconsistent with the facts and governing law. Importantly, the Hawaii case was stayed before the Company could respond to Landlord's motion for summary judgment. Counsel for the Company in Hawaii can confirm that the Company was prepared to file a response to the summary judgment pointing out that the payment default had been timely cured and that the default asserted by Landlord was not material under Hawaii law.

Landlord insists that the cure period under the Lease was 30-days while ignoring that the Lease expressly authorized tenant to cure after the 30-days when reasonably necessary. Given the Company's diligent pursuit and receipt of financing from Leonite, all lease payments were cured long before this receivership action was filed and well within the "reasonably necessary" cure period that is an express term of the Lease. The Receiver submits that it is misleading for the Landlord's current counsel to fail to advise this Court that the cure period under the lease is expressly *more* than 30-days when, as

here, it was necessary for the Company to cure within a short additional amount of time. *See* Lease, Exhibit 1, at ¶ 19.

The Receiver notes that on December 26, 2023, the Company wired $134,000 to Landlord which amount included an overpayment on any past-due rent. The Landlord chose to ignore this cure in its current Motion. In sum, Landlord's statement to this Court that the Company "failed to cure," before Leonite commenced this action is not correct. Leonite commenced this action on January 18, 2024. This was *after* the Company made all owing rental payments by wire transfer on December 26, 2023. *See* Exhibit 2. Because Hawaii law precludes the remedy of termination under these facts, Landlord's lawsuit for eviction in Hawaii is not meritorious and this final factor favors denial of Landlord's motion seeking relief from stay.

**C. This Court Should Not Limit the Receiver's Powers.**

The Receiver submits that relief from the stay on the Hawaii litigation is not warranted under the law and the facts before this Court. Should this Court nonetheless allow the Hawaii litigation to continue, this Court should not otherwise alter the Order appointing the Receiver. The Receiver's work is designed to, and is, making the assets of the Company more valuable. Trials and appeals are time consuming. Meanwhile, the Receiver is doing a terrific job managing the business of the Company and is bringing in revenue. Allowing the Receiver's work to continue even if the Hawaii litigation is allowed to proceed will only benefit all parties, including the Landlord, who will likely be able to continue to receive rental payments with revenue, rather than through the funds loaned by Leonite.

Importantly, the Receiver is not borrowing funds from the Landlord, but from Leonite. If Leonite objects to the Receiver's efforts to maximize the value of the receivership estate, Leonite will no doubt bring its concerns to the Court. Meanwhile, because the Landlord's interests are not in any manner impacted by the Receiver's efforts to rebuild the Company, or by Leonite's loan, Landlord has no good cause to seek modification of the current Order.

Instead, due to certain difficulties caused by the Landlord's displeasure with this Court's Order appointing a Receiver, the Receiver asks this Court to make clear to Landlord that its Order remains in place as a binding Court Order and that Landlord is not permitted to interfere with the Receiver's efforts to maximize the value of the receivership estate. The Receiver emphasizes that the Landlord's ownership is struggling to comply with this Court's Order, *not* Landlord's attorneys. Landlord's ownership needs to be reminded that the Receiver has the power and authority to manage the Company as he sees fit without interference from Landlord's owners.

## CONCLUSION

The Landlord is not harmed by this receivership because the Landlord is receiving rent and other payments. The Landlord is not entitled to terminate the Lease under Hawaii law because there is and has been no material default on the Lease. Landlord's motion seeking relief from stay and/or for modification of this Court's Order should be denied.

Respectfully submitted this 9th day of July 2024.

ROBINSON WATERS & O'DORISIO, P.C.

By: */s/ Tracy L. Ashmore*

Tracy L. Ashmore, #25944
Robinson Waters & O'Dorisio, P.C.
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
E-mail: tashmore@rwolaw.com
*Attorney for Receiver*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 9, 2024, a true and correct copy of the foregoing **RECEIVER'S RESPONSE TO HBDC's MOTION FOR RELIEF FROM STAY** was filed and served via CM/ECF to all counsel of record.

*s/ Tiffany Arguello*
For Robinson Waters & O'Dorisio, P.C.