**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00149

**LEONITE FUND I, LP**,

Plaintiff,

v.

**HAWAIIAN SPRINGS, LLC** and **HSW HOLDINGS CORPORATION,**

Defendants.

And

**HAWAII BREWERY DEVELOPMENT CO., INC.**

Intervener Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT HAWAII BREWERY DEVELOPMENT CO., INC.'S MOTION FOR RELIEF FROM STAY AND TO AMEND OR MODIFY THE ORDER APPOINTING RECEIVER**

---

Plaintiff Leonite Fund I, LP ("Leonite"), by and through its undersigned counsel, submits this Response to Defendant Hawaii Brewery Development Co., Inc.'s Motion for Relief from Stay and to Amend or Modify the Order Appointing Receiver, and in support thereof states as follows:

## BACKGROUND

1. Defendant Hawaiian Springs, LLC ("HSLLC") is a producer of premier bottled water products.

2. HSW Holdings Corporation ("HSW") is a holding company that owns a percentage of the issued and outstanding shares of HSLLC and is the Manager of HSLLC.

3. HSLLC's business operations are located on a parcel of land in Kea'au, Hawaii.

4. HSLLC leases the land (the "Leased Premises") pursuant to a lease agreement (the "Lease") between HSLLC and Hawaii Brewery Development Co., Inc. ("HBDC").

***The Loan and Security Agreement***

5. Leonite loaned money to HSLLC and HSW (collectively, the "Borrowers"), as evidenced by a Senior Secured Promissory Note dated September 28, 2022 (the "Note"), and as amended by a First Amendment to Senior Secured Convertible Promissory Note, dated March 20, 2023. *See* Exhibit A to the Complaint at Docket No. 1

6. The Borrowers' obligations under the Note are secured by a Pledge and Security Agreement dated September 28, 2022 (the "Security Agreement"), made by Borrowers for the benefit of Leonite, as Lender. *See* Exhibits A and B to the Complaint.

7. In order to secure the Borrowers' obligations to Leonite under the Note, the Security Agreement granted Leonite a security interest in certain collateral, including the Lease and other contracts. *See* Exhibit B to the Complaint.

***The Default***

8. Events of Default as defined in the Note and Security Agreement have occurred and are continuing, including HSLLC's failure to pay the outstanding balance of the Loan.

9. Upon information and belief, HSLLC does not dispute the aforementioned default. In fact, HSLLC consented to the appointment of the receiver in this case based upon defaults under the Note and Security Agreement.

10. HSLLC has failed to cure the Events of Default existing under the Note and Security Agreement.

11. Following the Events of Default, Leonite loaned additional funds to HSLLC to bring HSLLC current on its rent and other obligations to HBDC.

12. Leonite is concerned that HSLLC will continue to default on its lease obligations to the detriment of Leonite and its collateral.

13. If HSLLC were to be evicted from the Leased Premises, HSLLC would lose its sole source of premier water and would not be able to remain in business, causing substantial damage to the creditors, investors, and employees of HSLLC and HSW, including Leonite.

14. On or about December 13, 2023, Leonite sent a notice of default to HSW and HSLLC asserting that they were in default of their payment obligations under the Note and that, as of that date, the sum of $2,254,323.58 was due and owing by Borrowers to Leonite.

15. HSW and HSLLC do not have sufficient assets to pay the substantial sum owed to Leonite.

### *Appointment of Receiver and Imposition of the Stay*

16. The Security Agreement entitles Leonite to the appointment of a receiver "as a matter of right" upon an Event of Default. *See* Exhibit B to the Complaint at Section 7(a)(i)(G); *see also* Exhibit A to the Complaint at ¶ 4.1.5.

17. Absent appointment of a receiver pursuant to the express terms of the Security Agreement and Note, Fed. R. Civ. P. 66, and C.R.S. 38-38-602(3), the interests of Leonite and other creditors are in dire jeopardy.

18. In accordance with the terms of the Note and Security Agreement, and due to the financial issues and crises they are facing, on December 26, 2023, HSLLC and HSW agreed to the appointment of Robert L. Stevens as receiver (the "Receiver"), with each entity executing a unanimous written consent of their respective members and managers (the "Unanimous Written Consents"). *See* Exhibits C and D to the Complaint.

19. Leonite, HSW, and HSLLC selected Mr. Stevens as receiver for the reasons discussed in detail in Leonite's Motion to Appoint Receiver, including that he is a qualified receiver who resides in Colorado, where HSLLC and HSW sell products and where Leonite, HSW, and HSLLC have agreed to venue and governing law. *See Motion to Appoint Receiver* at Docket No. 3; Exhibits C, D, and E to the Complaint.

20. On January 1, 2024, Leonite, HSLLC, and HSW executed an agreement pursuant to which each entity agreed to be governed by the laws of the State of Colorado and to venue in state and federal courts located in Colorado. *See* Exhibit E to the Complaint.

21. Accordingly, on January 8, 2024, Leonite filed its Complaint for Appointment of a Receiver (the "Complaint"), commencing the above-captioned lawsuit against HSLLC and HSW as defendants and seeking, consistent with the Unanimous Written Consents, appointment of the Receiver primarily as provided for "as a matter of right" by the Security Agreement and Note, but also pursuant to Fed. R. Civ. P. 66 and C.R.S. 38-38-602(3). Docket No. 1.

22. On January 18, 2024, Leonite filed its Motion to Appoint Receiver, requesting that the Court appoint Mr. Stevens as receiver and impose a blanket stay to prevent interference with the receivership estate pursuant to the express terms of the Security Agreement and Note, F.R.C.P. 66(a), and Colorado law. Docket No. 3.

23. On February 1, 2024, the Court entered its Order Appointing Receiver, which found, among other things, that Fed. R. Civ. P. authorizes the Court to appoint a receiver, that the

parties agreed to appointment of a receiver, agreed to be bound, by Colorado law, and that Colorado law authorizes the appointment of a receiver under the circumstances present in this case, and stayed all actions against HSLLC and HSW (the "Stay"). Docket No. 18.

***Subsequent Pleadings and Actions by Receiver***

24. Despite being represented by competent counsel and receiving notice of the Receiver's appointment shortly after said appointment on February 1, 2024, HBDC waited until April 25, 2024, to file its Motion to Intervene, requesting authorization to intervene as a defendant in this action. Docket No. 26.

25. On May 1, 2024, the Receiver filed his status report, detailing, among other things, (1) the Receiver's actions, which include ongoing efforts related to the stay of the eviction proceedings in Hawaii, collecting receivables and selling existing inventory, interacting with numerous creditors, preparing to resume operations, communicating with HBDC, and attempting to secure financing, and (2) the Receiver's anticipated future actions, which include "payments to the utility company, bringing [HBDC] current on the power obligation, funding payroll for operational staff, paying for equipment maintenance and other expenses required to restart the bottling operation, [and]. . . seek[ing] to open a claims period if and when the operational business is functioning." *Receiver's Status Report*, Docket No. 30.

26. On May 31, 2024, HBDC filed its Motion to Dismiss Complaint, seeking an order dismissing the claim with prejudice pursuant to Fed. R. Civ. P. 12(b), terminating the Receiver's appointment, and lifting the stay imposed on HBDC's Hawaii Litigation and any other stayed cases (the "Motion to Dismiss"). Docket No. 39.

27. On June 20, 2024, the Receiver filed his response to the Motion to Dismiss, explaining, among other things, that "[f]rom February 1, 2024 when it new about this case, until April 26, 2024 when it moved to intervene, [HBDC] accepted the benefits of the Receivership including receiving tens of thousands of dollars from the Receiver in rent, past due obligations owed on the power purchase agreement, and the restoration of power to the Property. Indeed, [HBDC] *insisted* that the Receiver restore power to the Property and that the Receiver otherwise protect the property." Docket No. 45.

28. The Receiver further explained in its response to the motion to Dismiss that as of June 20, 2024, "there is no monetary default on [HBDC]'s lease. [HBDC] and the Receiver worked

together through their counsel, to cure any prior defaults in the Lease as quickly as possible. [HBDC] is not harmed in any manner by the receivership." Docket No. 45.

29. Since his appointment, the Receiver has been working "to bring the business into a fully operational state. The Receiver believes that the business, once operational, will be an attractive acquisition for many buyers in the spring water market. The Receiver, and Leonite, are optimistic that the sale will result in sufficient proceeds to pay all creditors." Docket No. 45.

30. On June 21, 2024, Leonite filed its response to the Motion to Dismiss, establishing that the Complaint satisfies the pleading requirements of Fed. R. Civ. P. 8(a)(2) by containing a short and plain statement of the grounds for the Court's subject matter jurisdiction pursuant to 28 U.S.C.A. § 1332 as well as a short and plain statement of the claim showing that Leonite is entitled to relief. Docket No. 46.

31. As of the date of the filing of this Response, the Motion to Dismiss remains pending.

32. Meanwhile, on June 17, 2024, HBDC filed its Motion for Relief from Stay and to Amend or Modify the Order Appointing Receiver (the "Stay Motion"), wherein it asserts that application of the *Wencke* framework supports lifting of the stay so "so HBDC can have its day in court," and that circumstances have so "drastically changed" since the Court appointed the Receiver on February 1, 2024, such that the Court should limit the Receiver's activities to preserving the Property without attempting to re-start the business. Docket No. 41.

33. On June 25, 2024, HBDC filed a supplement to its Stay Motion asserting that the Stay violates 28 U.S.C. § 2283. Docket No. 48.

## ARGUMENT

### *A. The balance of the interests of the Receiver and HBDC and application of the* **Wencke** *factors weigh in favor of denying HBDC relief from the Stay*

34. Leonite agrees that the following three-factor test set forth in *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984) is the applicable legal standard for evaluating the propriety of the Stay in this case:

> (1) [W]hether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party' underlying claim.

35. As the Tenth Circuit clarified in *S.E.C. v. Vescor Cap. Corp.*:

> [T]he *Wencke* framework we adopt is not exactly the same as that a court would apply when considering lifting a typical preliminary injunction:
>
>> [The *Wencke*] test differs in emphasis from the traditional equitable criteria employed by courts to decide whether to grant, deny, or continue a preliminary injunction. The traditional preliminary injunction test would require the Receiver to show a probability of success on the merits and the possibility of irreparable harm to the receivership if the stay is not continued.
>
> *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). Instead, in a receivership-imposed stay, we balance the interests of the receiver and the moving party. *Id.*

*S.E.C. v. Vescor Cap. Corp.*, 599 F.3d 1189, 1196 (10th Cir. 2010).

36. "A district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate." *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005).

37. As the Ninth Circuit explained in *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985):

> The *Wencke* test simply requires the district court to balance the interests of the Receiver and the moving party. *Wencke I*, 622 F.2d at 1373. As the *Wencke I* court noted, the interests of the Receiver are very broad and include not only protection of the receivership *res*, but also protection of defrauded investors and considerations of judicial economy. *Id.* at 1372–73. This is a corollary of the district court's power to enter a blanket stay. *Id.* at 1369. This power is broader than the court's authority to grant or deny injunctive relief under Fed.R.Civ.P. 65. Id. at 1371.

38. As it concerns the status quo, a receiver's performance of its asset marshaling function, as distinguished from its asset distribution function, does not disturb the status quo. *Compare Wencke*, 742 F.2d 1230, 1231 (finding that the receiver threatened to disturb the status quo where he was preparing to distribute the assets), *with Acorn Tech. Fund, L.P.*, 429 F.3d at 443 (finding that the receiver had not disturbed the status quo by filing suit to recover money due because said act constituted the receiver fulfilling one of the "key functions as receiver . . . to marshal the receivership estate's assets").

39. Moreover, "[n]ot being allowed the first bite at the apple is not the kind of substantial injury we will recognize under the first prong of *Wencke*." *Acorn Tech. Fund, L.P.*, 429 F.3d at 449 ("What is *not* sufficient is a clear attempt by the Barracks to withdraw funds from

the receivership estate before the receiver is ready to distribute funds to all creditors. Not being allowed the first bite at the apple is not the kind of substantial injury we will recognize under the first prong of *Wencke*.").

40. With respect to the timing factor, "[a] receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *Vescor Cap. Corp.*, 599 F.3d at 1198 (quoting *Acorn Tech. Fund, L.P.*, 429 F.3d at 443).

41. As the Ninth Circuit acknowledged in *Wencke*:

> [w]here the motion for relief from the stay is made soon after the receiver has assumed control over the estate, the receiver's need to organize and understand the entities under his control may weigh more heavily than the merits of the party's claim. As the receivership progresses, however, it may become less plausible for the receiver to contend that he needs more time to explore the affairs of the entities. The merits of the moving party's claim may then loom larger in the balance.

*Wencke*, 742 F.2d at 1231-32 (quoting *S.E.C. v. Wencke, et al. Superior Motels v. Gould*, 622 F.2d 1363 (9th Cir. 1980)).

42. "[V]ery early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties." *Acorn Tech. Fund, L.P.*, 429 F.3d at 443–44 (finding that the timing factor weighed in favor of receiver where the movant first sought to lift the stay when the receivership had been in place for only ten months); *see Vescor Cap. Corp.*, 599 F.3d at 1198 (concluding that the lower court did not abuse its discretion in denying a motion to lift the receivership stay and that the timing factor weighed in favor of the receiver where the receiver had been in place five months). *Compare to Wencke* (concluding that the timing factor weighed in favor of relief from the stay where the receivership was in place for over seven years, no new material facts have been discovered for at least six years, the receiver was ready to distribute the assets, and "[s]urely the receiver has had ample opportunity to explore, organize, and understand the affairs of the entities under his control.").

43. As it concerns the merits of the case:

> A district court need only determine whether the party has colorable claims to assert which justify lifting the receivership stay. *See Wencke II*, 742 F.2d at 1232. If it appears that a claim has no merit on its face, that of course may end the matter. But, if a claim may have merit-and factual development may be necessary to assess this-the district court will have to address the other *Wencke* factors.

*Acorn Tech. Fund, L.P.*, 429 F.3d at 444 (finding that the receivership stay should not be lifted to allow the assertion of claims that are without merit as a matter of law); *see FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601 (N.D.Ill. 2001) (finding that the first and second *Wencke* factors, which tipped in the direction of maintaining the receivership stay, outweighed the admittedly strong merits of the asserted claim).

44. The moving party bears the burden of proving that the stay should be lifted. *Wencke*, 742 F.2d at 1231.

***i. Preservation of the Status Quo***

45. HBDC seeks relief from the Stay in order to pursue the Hawaii Ejectment Case, wherein it seeks to eject HSLLC from the Leased Premises due to its alleged breach of the Lease.

46. As Leonite has maintained throughout the pendency of this case, the damage to the creditors, investors, and employees of HSLLC and HSW, including Leonite, imminent if HSLLC were to be evicted from the Leased Premises is substantial—HSLLC would lose its sole source of premier water and would not be able to remain in business.

47. Indeed, all parties acknowledge the Defendants' business, and in turn the efforts of the Receiver, turn on the access to the leased real property. *See Stay Motion* at p. 4.

48. The Stay preserves the status quo by enabling HSLLC to remain a tenant in the Leased Premises while the Receiver engages in the actions necessary to rehabilitate HSLLC's bottled water business, which in turn will benefit HSLLC's creditors, including HBDC.

49. Eliminating the Stay would destroy the status quo, along with the Receiver's ability to turn around HSLLC's business, for HBDC's sole benefit.

50. Moreover, given that the pre-receivership monetary Lease defaults have since been cured, HBDC suffers no harm by continuance of the Stay and preservation of the status quo. *See* Docket No. 45.

51. Based on the foregoing, this *Wencke* factor weighs in favor of the Receiver.

***ii. Timing***

52. As to the timing of events, the Court entered its order appointing the Receiver on February 1, 2024. HBDC filed its Stay Motion on June 17, 2024.

53. Thus, at the time HBDC sought relief from the Stay, the Receiver had only been in place for a mere <u>four months</u>.

54. In that time, the Receiver has worked with HBDC to cure all monetary defaults on the Lease and has also been working to bring the business into a fully operational state. *See* Docket No 45.

55. As HBDC acknowledges, through his efforts to date, the Receiver has determined that Defendants owe numerous creditors more than $8 million. *Stay Motion* at p. 5; *Receiver's Status Report* at p. 2.

56. While the Receiver has been working diligently and has made considerable progress in identifying and understanding HSLLC's liabilities and assets, collecting receivables, and commencing communications with HSLLC's numerous creditors, he requires additional time explore the Defendants' affairs, negotiate with creditors, and take the actions necessary to rehabilitate Defendants' business, which are described in more detail in the Receiver's Status Report No. 1. *See Receiver's Status Report*; *see also Wencke*, 742 F.2d at 1231-32.

57. It is still very early in the receivership and lifting the stay will necessarily disrupt the receiver's duties, as HBDC seeks relief from the stay to terminate the Lease—which there can be no dispute, with a remaining term of 40 years, is a very valuable asset of the estate—and evict HSLLC from the Leased Premises, which premises is essential for rehabilitation of HSLLC's business. *See Receiver's Status Report* at p. 3; *see also Acorn Tech. Fund, L.P.*, 429 F.3d at 443–44.

58. Based on the foregoing, this *Wencke* factor weighs in favor of the Receiver.

***iii. HBDC's Claim is Meritless***

59. As previously stated, HBDC seeks relief from the Stay in order to pursue the Hawaii Ejectment Case, wherein it seeks to eject HSLLC from the Leased Premises due to its alleged breach of the Lease.

60. However, as explained by the Receiver in his response to the Motion to Dismiss, since his appointment, the Receiver has worked diligently to, and has indeed succeeded in, bringing HSLLC current on the Lease, curing the pre-receivership monetary default as permitted by the express terms of the Lease. Docket No. 45.

61. HBDC's Hawaii Ejectment Case is thus without merit.

62. To the extent there is any merit at all to HBDC's allegation that some technical default of the Lease persists, any such merit fails to outweigh the other *Wencke* factors, which weigh heavily in favor of continuance of the Stay.

63. Indeed, HBDC's Stay Motion does not establish that its claims are colorable or meritorious. Rather, HBDC wholly fails to address the reality that Defendants, through the efforts of the Receiver, have cured Lease defaults and that HBDC, through its acceptance of payments from Leonite, waived its argument that the Lease has terminated.

64. As the Receiver explained in his response to the Motion to Dismiss:

> [HBDC] has had no issue accepting rental payments and other monies from the Receiver. The Receiver has attempted to negotiate a new Lease with [HBDC] and [HBDC] has declined any and all negotiations. Nonetheless, by accepting the rent from the Receiver who is prepared to affirm the Lease, as well as all cure payments and additional consideration in the form of restoration of power, [HBDC] has waived its right to terminate the Lease. The Receiver notes that although [HBDC] now purportedly objects to the assignment of any rights to Leonite, [HBDC] knowingly accepted funds from Leonite well before the Receiver was appointed and [HBDC]'s position that Leonite has no interest in the Lease cannot be reconciled with [HBDC]'s and Leonite's prior course of dealing.

*See* Docket No. 45.

65. At this time, the Receiver's need to organize and understand HSLLC weighs more heavily than the merits, if any, of HBDC's claim.

66. Based on the foregoing, this *Wencke* factor weighs in favor of the Receiver.

67. This Court should give substantial weight to the Receiver's need to proceed unhindered by litigation and the very real danger, and in this case, unfortunate reality, that the expenses necessarily incurred in litigating HBDC's unrelenting opposition to the Receiver's efforts are diminishing the receivership estate. *See Acorn Tech. Fund, L.P.*, 429 F.3d at 443.

68. Therefore, the balance of the interests of the Receiver and HBDC and application of the *Wencke* factors weigh in favor of denying HBDC relief from the Stay.

***B. Grounds do not exist to modify the Order Appointing Receiver***

69. HBDC asserts that the Order Appointing Receiver should be modified to limit the Receiver's activities to preserving the real property without attempting to re-start and sell the business as a result of a "drastic" change in circumstances since entry of the Order Appointing Receiver.

70. The "drastic" changes in circumstances cited by HBDC are (1) that HBDC intervened and moved to dismiss the case and that there is a "possibility" that the case may be dismissed or that HSLLC may lose its lease rights, possession of the Property, and access to the

Spring; and (2) that the Receiver has spent money to fulfill his obligations as receiver and attempt to reorganize Defendants' business. *See Stay Motion* at pp. 13-14.

71. The "possible" outcome of a motion filed by the same party seeking relief from the stay and the fact that the Receiver has spent funds in order to engage in reasonable and necessary activities within the scope and in furtherance of his duties as receiver are not the type of "drastic changes in circumstances" justifying modification of the Order Appointing Receiver.

72. HBDC cites a single case, *Jouflas v. Wyatt*, 646 P.2d 946, 948 (Colo. App. 1982, in support of its argument that drastic changes in circumstances warrant modification of the Order Appointing Receiver.

73. In *Jouflas*, the court found that circumstances had changed such that the trial court had a sufficient basis to reconsider its prior ruling denying the appointment of a receiver where at the time of the appointment of the receiver, the debt owed was approximately $7.7 million, and it was discovered after appointment of the receiver that the sole asset to which the moving party could look as security for the debt had been sold for $3.2 million, indicating its value was substantially less than the amount of the debt, thus justifying appointment of a receiver.

74. No such significant change in circumstances as before the court in the *Jouflas* case exists in the case at bar.

75. Contrary to HBDC's assertions, the circumstances existing at the time this Court entered the Order Appointing Receiver have not drastically changed, and, to the extent they have changed, are merely the result of HBDC's own efforts and in any event have not changed in a manner that would support modification of the Order Appointing Receiver.

76. Accordingly, HBDC's request to modify the Order Appointing Receiver should be denied.

***C. The Stay does not violate 28 U.S.C. § 2283***

77. HBD asserts that the Stay violates the Federal Anti-Injunction Act, 28 U.S.C. § 2283 "because no exception to the Act's prohibition of the Stay arises in this case." *Supplement* at p. 3.

78. 28 U.S.C. § 2283 provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

79. "The receivership's role is undermined if investor-claimants jump the queue, circumventing the receivership in an attempt to recover beyond their pro rata share." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 896 (5th Cir. 2019).

80. Accordingly, the court may issue such a stay where necessary protect the receivership res. *See, e.g., id.* at 897 (court has jurisdiction to bar claims that "directly affect the receiver's assets").

81. "This authority is an exception to the Anti-Injunction Act, 28 U.S.C. § 2283 . . . ." *Sec. & Exch. Comm'n v. Champion-Cain*, No. 319CV01628LABAHG, 2021 WL 5882599, at *3 (S.D. Cal. Dec. 13, 2021).

82. Here, this court has jurisdiction over the receivership estate, which res includes the Lease.

83. The Hawaii Ejectment Case implicates the same res.

84. The actions before the Hawaii state court and this court are both actions *in rem* or *quasi in rem* as they concern the parties' interests in the Lease of certain real property. *See e.g., In re Brown*, 521 B.R. 205, 216 (Bankr. S.D. Tex. 2014), adopted, CIV. A. No. H-14-2967, 2014 WL 7342435 (S.D. Tex. Dec. 23, 2014) (unpublished), *aff'd in part, appeal dismissed in part,* 807 F.3d 701 (5th Cir. 2015) ("*In rem* jurisdiction is a court's jurisdiction to determine rights in property in the court's possession, known as the res."); *Primo Resources, Inc. v. Balcones Oil Co.* (*In re Balcones Oil Co.*), 21 B.R. 36, 39 (Bankr. W.D. Tex. 1981) (determining that the court had *in rem* jurisdiction over certain oil and gas leases, even though the bankruptcy court ultimately determined that the debtor had no interest in the leases because the leases had terminated prepetition).

85. The Order Appointing Receiver provides that "all actions against [Defendants] shall be STAYED." Docket No. 18.

86. The Order Appointing Receiver thus prevents the Hawaii state court proceeding from interfering with the res in custody of the federal district court, and thus aids the federal district court's jurisdiction over the receivership entity. *See Zacarias*, 945 F.3d at 903; 28 U.S.C. § 2283.

87. The Order Appointing Receiver also effectively ensures that HBDC is not permitted to "jump the que" in an "attempt to recover beyond [its] pro rata share." *See id.* at 896.

88. Indeed, HBDC does not appear to dispute that its suit would interfere with the receivership estate and its administration.

89. The broader implication of allowing HBDC to circumvent the Stay based on its filing of the Hawaii Ejectment Case is that it encourages individual creditors to race debtors experiencing financial turmoil to the courthouse in order to deny them an opportunity to rehabilitate, to the detriment of all other creditors, in effect forcing them to pursue bankruptcy—a much more expensive and time consuming remedy.

90. Such outcome is especially inequitable where as here the state court case is now largely if not entirely without any arguable merit given that alleged Lease defaults have been cured, and will only result in further delays, accrual of unnecessary litigation expenses, and diminishment of the receivership estate, which will inevitably hinder if not wholly destroy Defendants' ability to rehabilitate their business.

91. Because the Stay authorized by the Order Appointing Receiver is necessary in aid of this court's jurisdiction, the Stay does not violate 28 U.S.C. § 2283.

## CONCLUSION

WHEREFORE, Plaintiff Leonite Fund I, LP respectfully requests that this Court deny Defendant Hawaii Brewery Development Co., Inc.'s Motion for Relief from Stay and to Amend or Modify the Order Appointing Receiver and grant such other and further relief as the Court deems proper

Dated: July 9, 2024 Respectfully submitted,

*/s/ Aaron A. Garber*

Aaron A. Garber, #36099
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120
Telephone: (303) 296-1999
Telecopy: (303) 296-7600
agarber@wgwc-law.com

And

Zvi Raskin, Esquire
1 Hillcrest Center Drive
Suite 230
Spring Valley, New York 10977
Telephone: 845.202.3999
E-Mail: zr@raskinlegal.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on July 9, 2024, I served by prepaid first class mail a copy of **PLAINTIFF'S RESPONSE TO DEFENDANT HAWAII BREWERY DEVELOPMENT CO., INC.'S MOTION FOR RELIEF FROM STAY AND TO AMEND OR MODIFY THE ORDER APPOINTING RECEIVER** on all parties against whom relief is sought and those otherwise entitled to service at the following addresses:

Tracy L. Ashmore
tashmore@rwolaw.com,hstahl@rwolaw.com

Stephen E. Kapnik
skapnik@lohfshaiman.com,ljohnson@lohfshaiman.com

Alan Stewart Thompson
athompson@lohfshaiman.com,aculligan@lohfshaiman.com

*/s/ Nichole Garber*
For Wadsworth Garber Warner Conrardy P.C.