**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:24-cv-00149-NYW-STV

LEONITE FUND I, LP,

Plaintiff,

v.

HAWAIIAN SPRINGS, LLC and HSW HOLDINGS CORPORATION,

Defendants,

and

HAWAII BREWERY DEVELOPMENT CO., INC.,

Defendant, Counterclaimant, and Cross-claimant.

---

**REPLY IN SUPPORT OF**
**MOTION FOR RELIEF FROM STAY AND**
**TO AMEND OR MODIFY THE ORDER APPOINTING RECEIVER by**
**HAWAII BREWERY DEVELOPMENT CO., INC.**

---

In support of its *Motion for Relief From Stay and to Amend or Modify the Order Appointing Receiver* [Docket # 41, the "Motion"], Defendant Hawaii Brewery Development Co., Inc. ["HBDC"] replies to: (1) the *Receiver's Response to HBDC's Motion for Relief From Stay and Supplement to Motion for Relief From Stay* [Docket # 53, "Receiver's Response"], and (2) *Plaintiff's Response to Defendant Hawaii Brewery Development Co., Inc.'s Motion for Relief From Stay and to Amend or Modify the Order Appointing Receiver* [Docket # 55, "Leonite's Response; both responses together, the "Responses"], as follows:

## INTRODUCTION

Is the Lease enforceable or was it terminated? All parties acknowledge that viability of the Hawaiian Springs water business, and thus *this entire receivership*, depends on the

answer to that question. The easiest, most efficient, and fairest path to that answer lies through the Hawaii state court, in the Hawaii Ejectment Case, an appropriate forum, in which the issue was nearly ripe for determination before Leonite commenced this proceeding -- 3,000 miles away.

Like an ostrich with its head in the sand, Leonite and the Receiver take great pains (and expend great resources) to avoid litigating this core issue, all to avoid an answer they may not like, but which is foundational to this proceeding. Just as a bankruptcy trustee must move to assume an executory contract under 11 U.S.C. §365 within 60 days after commencement of a case, a careful Receiver would be expected to seek the answer to this lynchpin question early in the process of fulfilling his duty to *determine* and protect receivership property. Although, as the Receiver notes, Hawaiian Springs, LLC [“HSLLC”] was “prepared to file a response to [HBDC’s motion for] summary judgment” in the Hawaii Ejectment Case [Receiver’s Response, at 16], the Receiver and Leonite terminated the Hawaii state court’s ability to rule on the nearly ripe issue, causing delay and expense. And for reasons unknown, they continue resisting any determination of this crucial issue, despite potentially wasting every resource spent by the Receiver if the Receivership fails. Nevertheless, this question must still be answered, and the best forum for its resolution is the Hawaii state court.

Accordingly, the Stay should be lifted so the Hawaii state court can do its job, and to preserve everyone’s resources, the Receiver should be corralled while it does so.

1. **The Hawaii State Court is the Only Forum Available Because the Anti-Injunction Act Applies without Exception.**

Neither Leonite's nor the Receiver's Response addresses the simple analysis this court must perform in determining whether the U.S. Anti-Injunction Act (the "Act," 28 U.S.C. §2283) prohibits stay of the Hawaii State Court Actions. As set out in the Motion, the Stay cannot withstand the Act's prohibition unless one of the three exceptions is met: (1) If Congress "expressly authorized" the injunction; (2) If an injunction is "necessary in aid of [the federal court's] jurisdiction;" or (3) If an injunction is issued "to protect or effectuate [the federal court's] judgments."

Contrary to the Receiver's unsupported position (Receiver's Response, at p. 3), *much* "doubt exists that governing law empowers a receivership court to stay *any* proceeding that involves receivership entities or receivership assets" [emphasis supplied]. The Anti-Injunction Act is governing law that does just that. The Act's exceptions are narrow and are not to be loosely construed. *Smith v. Bayer Corp.*, 564 U.S. 299, 131 S. Ct. 2368, 2375, 180 L. Ed. 2d 341 (2011). As a result, doubts about the applicability of an exception must be resolved in favor of allowing the state-court proceeding to continue. *Id.*, 131 S. Ct. at 2382. Nothing in this case fits into an exception to the Act.

Addressing only the second exception, both the Receiver and Leonite assert that the Stay is permitted under the Act because it is "necessary in aid of the [federal court's] jurisdiction." [Receiver's Response at 4 – 6, Leonite's Response, at 12 – 13].

For the "in aid of the court's jurisdiction" exception to apply:

• both the federal and state suits must constitute *in rem* or *quasi in rem* proceedings; *and*

• the federal court must be the first to take possession of the res (the property under dispute in the federal and state actions).

*Tooele Cty. v. United States*, 820 F.3d 1183, 1188-89 (10th Cir. 2016.)

Even assuming that the Hawaii Ejectment Case, in which HSLLC's lease and possessory interests in the Property are at issue, is an action *in rem*, the case at bar *is not.* Neither Leonite nor its Complaint has sought (and in fact Leonite refuses to amend its complaint herein to seek) adjudication of any interest in property. *Id.* Further showing the vacuity of the Responses, this case -- 24-cv-00149 -- was intentionally commenced *months after* the November, 2023 commencement of the Hawaii Ejectment Case. This case does not meet the ""necessary in aid of the [federal court's] jurisdiction" test, so the Act applies.

While the Receiver and Leonite cite multiple cases affirming a federal court's power to stay state court actions under Fed.R.Civ.Pro 66, not one of those authorities exempts assertion of such power from the prohibition of the Anti-Injunction Act merely because it involves a receivership action, and each that rejects the Act's prohibition does so only *because one or more of the three exceptions was met*. As neither Leonite nor the Receiver can establish any recognized exception to the Anti-Injunction Act in this case (and indeed none exists), its prohibition requires this Court to lift the Stay imposed on the Hawaii State Court Actions.

### 2. *Wencke* Requires Lift of the Stay in any Event.

All parties agree on applicability of *SEC v. Wencke*, 742 F.2d 1230 (9th Cir. 1984). Application of the *Wencke* factors in this case favor lift of the stay. Leonite and the Receiver fail to show otherwise.

***a.*** **The Status Quo is Preserved.**

Both Leonite and the Receiver rely on a "s*tatus quo*" that does not exist. Both assume that the status quo includes a Lease that was not breached or terminated, that the Receiver can enforce, and upon which he can base all his activities. When Leonite started this action the Lease had been breached and terminated and it remains breached and terminated. Accordingly, the status quo includes only a breached and terminated Lease.

At the time Leonite commenced this case, HSLLC had already breached the Lease by failing to pay any rent for months and by pledging the Lease as security for Leonite's loan. It received notice of breach, but failed to cure within the time allowed. Well within its rights under the Lease, HBDC declared the Lease terminated. These facts, set forth on the record and established with admissible evidence in the Motion (Motion, at pp.10, 11, and Exhibit B thereto, Affidavit of Marcus Bender, ¶¶ 24 - 27) remain uncontradicted by any *evidence* offered by Leonite or the Receiver. Neither Leonite, by this action, nor the Receiver, by his mere appointment, can "un-terminate" the Lease. Nor has the Receiver cured, and he cannot cure, the prior existing breaches.

Contrary to the unsupported statements of counsel in the Receiver's Response, *the Receiver has failed to cure monetary breaches of the Lease* because the Receiver, despite demand, refuses to pay: (1) Additional sales-based Rent -- even though the Receiver admits receiving over $127,000 in revenue[1] [Receiver's Response at p. 2]; (2) Property insurance premiums; and (3) Amounts necessary to maintain the Property and fix the leaking roof, as required under the Lease. Post-default payments by Leonite/Receiver did not and could not

---

[1] Aside from a small amount of pre-existing inventory, the *only* thing the Receiver has to sell that creates revenue is HBDC's Hawaiian spring water, to which he has no right if the Lease terminated.

cure the existing defaults, reanimate the terminated Lease, or require HBDC to credit such payments to unpaid rent. *See* Haw. Rev Stat. §666-5 (2023).

The *status quo* includes a breached and terminated Lease, or at a minimum a Lease whose enforcement is contested. Lifting the Stay to allow the Hawaii state court to determine the status of the Lease acknowledges and does not change the *status quo.*

**b. Continuing the Stay will Impose Substantial Injury on HBDC.**

Unless the Stay is lifted, HBDC is deprived of its day in court to test the enforceability of the Lease, and of its ability to exercise its property rights. Further, HBDC will continue to suffer financial injury if deprived of its ability to eject a tenant that has, for years, failed to get its water business off the ground and pay the Additional (sales-based) Rent. Only when the Base Rent is supplemented by the Additional Rent does HSLLC's rent approximate the market rent for the Property. Absent Additional Rent, HBDC does not and cannot receive the market rent for the Property. Accordingly, HBDC suffers continuing financial harm when forced to endure a Lease that fails to generate market rent, especially when, under the law and the Lease terms, it is entitled to terminate such Lease, remove the recalcitrant tenant, and exercise its property rights by immediately using the Property for a higher and better purpose.

Nor does the Receiver, an expert in securities issues – *but not the drinking water business* – offer any hope of achieving a different result. The Receiver refuses to describe (nor can he describe) what he will do differently to achieve what others could not.

The Receiver's vague plan is fully revealed in the Receiver's Response: the "receiver has the power and authority to manage the Company *as he sees fit without interference* from Landlord's owners" (Receiver's Response, at p. 17). The Receiver might as well have said

"without interference from anyone, including this court." At every turn, the Receiver has acted without court supervision (as examples, in entering into an additional priority convertible loan with Leonite and hiring an outside consultant), and has protected *only* his funder, Leonite. He has opposed any action and argument by HBDC, which is clearly the main and perhaps *only* party in interest other than Leonite. Leonite admits that bankruptcy would have been "more expensive and time consuming."[2] The expenses and time-consuming activities imposed had a bankruptcy been filed – and the only bankruptcy court with jurisdiction would have been the U.S. Bankruptcy Court for the District of Hawaii (*see* 28 U.S. Code § 1408) – arise from laws and procedures, tools and deadlines, created and established over decades under the U. S. Bankruptcy Code and U. S. Bankruptcy Rules, at least in part for the protection of creditors. In bankruptcy, the creditors might have expected a *plan within 120 days, supported by a disclosure statement.* Here, the Receiver has not stated anything other than the intention to sell the Lease *as he sees fit without interference*. How will the Receiver deal with over $8 million dollars of debt? *Silence*. How will the Receiver overcome the unique challenges presented by conduct of business on Hawaii to sell millions of dollars of water when at least three times other *Hawaii water companies* failed; what will he do differently? *Silence.* (Disappointingly, the Receiver's Interim Report No. 2 [Docket No. 56], submitted July 15, 2024, answers none of these questions.)

The Responses argue that HBDC is *benefitting* from payments allegedly resolving *some* of the Lease defaults, distributed to HBDC by Leonite (directly or through its pawn, the Receiver) and therefore, HBDC should acquiesce to the scheme. HBDC owns the bakery, it need not rejoice over receipt of the Receiver's offered crumbs.

---

[2] Of course, HSLLC has already gone that route; its reorganization failed.

HBDC will continue to suffer severe injury if the Stay is not lifted, and, other than allowing determination of the status of the Lease, the Receiver can do nothing to prevent it.

c. **Timing**.

Both Leonite and the Receiver assert that relief from the Stay is not appropriate this early in the receivership because the "Receiver has [not] had the opportunity to turn the receivership estate into a profitable ongoing operation" or "explore the Defendants' affairs, negotiate with creditors, and take the actions necessary to rehabilitate Defendants' business." Neither was able to articulate why lift of the Stay will impair the Receiver's ability to perform these duties, nor why the Receiver's duties do not include determining whether or not the Lease is an *asset* of the Receivership. Although the Receiver vaguely asserts (again without supplying *any evidence* in support) that having to fund litigation in the Hawaii Ejectment Case might interfere with his Receivership duties, staying true to his non-transparent MO (and likely because he has not even bothered to make a business plan or calculate its needs) he provides no detail about why the half million-dollar loan from Leonite and the additional $127,000 of revenue he has supposedly generated is insufficient to accomplish both.

Contrary to Leonite's and the Receiver's positions that lifting of the Stay at this time is inappropriate, in fact, lifting of the Stay *now* is crucial.

That the Receivership is relatively young weighs *in favor* of granting the Motion. Leonite acknowledges that the Lease is "a very valuable asset of the estate" (Leonite's Response at 9), however, it cannot qualify as such an asset if it was terminated and no longer exists. Determination of whether there is a Lease in existence, and whether HSLLC (and therefore the Receiver) has any rights under it at all is a task the Receiver, in marshalling estate assets, should have performed immediately upon his appointment. All creditors and

the Receiver need, and *should* want, this issue resolved before the Receiver continues to expend resources. Timing of the Motion favors lifting of the Stay because further delay of this crucial determination harms every party.

### d. HBDC's Very Strong Claim satisfies the *Wencke* "Colorable Claim" requirement

In considering the third prong of the analysis under *Wencke*, "[a] district court need only determine whether the party [seeking lift of the stay] has colorable claims to assert which justify lifting the receivership stay . . .. The more meritorious a movant's underlying claim, the more heavily this factor will weigh in the movant's favor." *United States v. JHW Greentree Capital, L.P.*, No. 3:12-CV-00116 (VLB), 2014 U.S. Dist. LEXIS 60891, at *19-20 (D. Conn. Feb. 10, 2014) citing *Wencke*, 622 F.2d at 1373.

The Receiver and Leonite assert in their Responses that the Lease was not terminated. A neutral reason why they are – and in particular, why the Receiver is -- advocating on HSLLC's behalf over a dispute that arose far before this action was commenced, is never specified. Indeed, since he is an officer of this Court, under a court-ordered mandate to marshal receivership assets, the Receiver's opposition to HBDC's efforts to seek determination of the Lease's validity makes no sense.

Regardless, both Responses highlight why the Motion should be granted. The Receiver and Leonite acknowledge that termination of the Lease is disputed. Therefore, neither can continue to turn a blind eye to the possibility if not likelihood that the receivership estate may not include the Lease or access to the Property. This is a critical issue that both the Receiver and Leonite should want to resolve before HSLLC falls further into debt and Leonite continues to loan additional funds to a "water bottling business," tenuous at best

under normal circumstances, which has no ability to operate without Lease rights. At a minimum, the Receiver's and Leonite's arguments — that HSLLC's breaches under the Lease were immaterial — establish that HBDC's claim is *at least* colorable.

Unlike the Motion, which attaches admissible evidence (affidavits and documents included within Motion Exhibit B), the Receiver and Leonite assert only argument unsupported by any actual evidence and without merit. The Receiver's arguments attempting to side-step the Lease's prohibition against assignment are misplaced. Assignment and pledge of the Lease as security *required* the Landlord's consent, and everyone admits no such consent was obtained. Nothing suggests that HBDC waived the prohibition against encumbering the Lease without HBDC's consent just because Leonite made holdover rent payments. *See* Haw. Rev. Stat. § 666-5 (2023) ("When any legal proceedings are brought by a landlord to evict a tenant . . . the acceptance of rent by the landlord during the litigation *shall not* be construed as recognition of the tenancy and shall be without prejudice to the landlord's legal rights at the inception of the proceeding" [emphasis supplied].) Similarly, nothing supports the Receiver's bald opinion that HSLLC's attempt to encumber the Lease, without any notice to or consent by HBDC, is a "minor breach." Finally, of course HBDC did not raise Leonite's alleged security interest in the Lease in "the Hawaiian lawsuit;" HBDC did not know of this breach until *after* Leonite commenced this action. Very simply, the court's equitable powers under Fed.R.Civ.Pro. 66 do not allow disregard of these admitted breaches because the court "cannot ignore state and federal laws and in particular, *it must respect contract rights*." *Bank Midwest v. R.F. Fisher Elec. Co.*, 514 F. Supp. 3d 1310, 1319-20 (D. Kan. 2021)(internal quotations and citations omitted, emphasis supplied).

Second, the Receiver misunderstands Hawaii case law regarding HSLLC's repeated failure to pay rent timely. The Receiver boldly, somewhat incredibly, and mistakenly

declares that "Hawaii Courts have consistently held that failure to timely pay rent is not a material" breach of lease, citing *Aickin v. Ocean View Invs.*, 84 Haw. 447, 935 P.2d 992 (1997).

*Aickin* holds no such thing. Rather, in *Aickin*, the Court found, under the specific facts of that case, that the subject lease defined default as "the failure to pay rent within thirty days" of the original due date of any payment; that although the tenant failed to pay on the original due date, it always paid within 18 days of the original due date; and therefore, although there may have been nonpayment on the original due date, there was no "material default under the lease agreement" at issue in *that* case because, under the lease terms allowing a cure payment within 30 days, the breach was cured. *Id.*, 84 Haw. at 458, 935 P.2d at 1003. In stark contrast, as described in the *Motion and Memorandum in Support of Motion for Summary Judgment* in the Hawaii Ejectment Case (Exhibit B to the Motion), undisputed by Leonite or the Receiver, HSLLC consistently failed to pay rent timely, and took no steps to commence curing its repeated defaults under the Lease for months, even after HBDC sent demand, and after it terminated the Lease. (*See* Motion, [Docket 41] Exhibit B, Affidavit of Marcus Bender, at 6., ¶¶ 24 – 27.)

The Receiver also cites various Hawaii cases purportedly as setting forth the standard for determining whether a breach is material; however, the Receiver conspicuously fails to apply any of this law to the facts in *this* case. In fact, neither Response contains any *evidence* or argument that HSLLC's repeated breaches and defaults under the Lease were immaterial; they instead avoid discussing the facts at all. At most, the Receiver, without factual support or legal authority, asserts that "[t]he few late payments and the assignment do not, under Hawaii law, qualify as material breaches." The Receiver's admission that there were a "few late payments" is damning; the statement by Leonite's counsel (unsupported by any *evidence*)

that the "pre-receivership monetary default" was cured "as permitted by the express terms of the" Lease is factually and legally wrong. (*See Id.*; Section 2(a), *supra*.) Neither Response establishes as "not colorable," HBDC's claim that the Lease was breached and terminated. Like Leonite's unguardedly candid "concern[that] HSLLC [has and] will continue to default on its lease obligations" (Leonite's Response at 2, ¶ 12), the *evidence* before the Court establishes that HBDC's claim that the Lease was breached and terminated is not only colorable, but will likely prevail.

### 3. Changed Circumstances Mandate Amendment of the Order Appointing Receiver ("Order") to Limit the Receiver's Powers.

Asserting only self-serving unsupported conclusions, Leonite contends that circumstances have not changed sufficiently to merit amendment of the Order, and the Receiver argues that allowing the Receiver's work to continue unabated even if the Hawaii litigation is allowed to proceed will benefit all parties.

Prior to HBDC's intervention, by design of Leonite and the Receiver, neither any original Defendant (HSLLC and HS Holdings) and no third-party, would or could challenge the validity of the Lease. Now, however, Leonite and the Receiver face the potential of losing access to the only product (Hawaiian spring water) HSLLC sells because a tribunal must and will adjudicate HBDC's challenge to the viability of the Lease. It is hard to imagine a greater change to a receivership action than a new threat to the very existence of the business placed within it.

Similarly, it is hard to imagine how a Receiver's continued efforts – costing nearly $40,000 a month -- to rehabilitate a business potentially having no product to sell will benefit anyone but the Receiver and its counsel. Certainly, no HSLLC creditor, including HBDC

and even Leonite, can possibly benefit from the possibility of such effort going to waste. Moreover, the Receiver has not ascribed any urgency to his efforts, and cannot describe how a delay in those efforts will jeopardize successful rehabilitation of the business. HSLLC had not operated or generated any revenue for at least six months prior to Leonite filing this action, and neither it nor the Receiver has yet commenced and scaled production and sales on any more than a minimal basis. Should the Receiver defeat HBDC's claims and, apparently without a business plan, succeed where so many others failed to rehabilitate the business, the spring water he intends to sell will still be there. Meanwhile, the risk to creditors and more importantly, to potential purchasers of the business, of harm arising from the Receiver's continued, potentially fruitless, very costly, unlimited rehabilitation efforts, far outweighs any jeopardy to the receivership and HSLLC's barely existing business potentially caused by a reasonable limitation of the Receiver's powers.

**Conclusion**

Neither Leonite nor the Receiver established any good reason for denying HBDC its day in court. Determination of the viability of the Lease, and whether it is an asset of the receivership estate, is crucial. The Hawaii State Court is poised and ready to make that determination, and the Stay is legally prohibited in any event. This Court should dissolve or lift the Stay.

WHEREFORE, Defendant HBDC requests that this Court: (1) Order Relief from the Stay imposed herein on all "actions against [HSLLC and HS Holdings]" to allow HBDC to litigate the Hawaii Ejectment Case, captioned *Hawaii Brewery Development Company v. Hawaiian Springs LLC et al.*, in the Circuit Court of the Third Circuit of Hawaii, Case No. 3CC-23-410; (2) Modify the Order Appointing Receiver to limit the Receiver's activities to preserving the real property without attempting to re-start and sell the business until the

Hawaii state court issues a final ruling in the Hawaii Ejectment Case; and (3) Grant such other and further relief as is just.

Respectfully submitted this 16th day of July, 2024.

*/s Alan S. Thompson*

______________________________

Alan S. Thompson (Colo. Bar #20238)
Stephen E. Kapnik (Colo. Bar # 7810)
Lohf Shaiman Jacobs PC
Denver, Colorado 80246
Telephone (303) 753-9000
Email: athompson@lohfshaiman.com

Attorneys for Defendant
Hawaii Brewery Development Co., Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 16th, 2024, I caused a true and correct copy of the foregoing to be filed and served via CM/ECF to counsel of record.

*/s Alan S. Thompson*

______________________________

Alan S. Thompson