**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:24-cv-00149-NYW-STV

LEONITE FUND I, LP,

Plaintiff,

v.

HAWAIIAN SPRINGS, LLC and HSW HOLDINGS CORPORATION,

Defendants,

and

HAWAII BREWERY DEVELOPMENT CO., INC.,

Defendant, Counterclaimant, and Cross-claimant.

---

# HAWAII BREWERY DEVELOPMENT CO., INC.'S RESPONSE TO RECEIVER'S INTERIM FEE REQUEST

---

Defendant Hawaii Brewery Development Co., Inc. ["HBDC"] responds to the Receiver's Interim Fee Request [Docket #51(the "Fee Request")] herein as follows:

## INTRODUCTION

1. HBDC does not, at this time, object to the reasonableness or payment, of the fees and costs requested by the Fee Request. However, because there is a possibility that the Court may vacate the Receivership herein, HBDC asserts that the Receiver should use only property of the receivership estate to pay fees and costs requested, and requests that the Court preserve the ability of interested parties to object to fees paid the Receiver if and when appropriate.

## BACKGROUND AND RESPONSE

2. Defendant, Hawaii Springs, LLC ("HSWLLC") owns and operates a business that packages and sells drinking water from a water spring located on the island of Hawaii. The water spring, along with a building housing the bottling and packaging plant, are located on land (the "Property") owned by HBDC, which HSWLLC leased from HBDC pursuant to a written Lease (the "Lease").

3. The Receivership herein was created upon the motion of Plaintiff, Leonite Fund I L.P. ("Leonite"), a creditor of HSWLLC.

4. Prior to Leonite filing this case and obtaining appointment of the Receiver, HBDC had commenced, in Hawaii State Court, two actions asserting that HSLLC breached the Lease and that the Lease was terminated. One such action (the "Hawaii Ejectment Case") seeks eviction of HSWLLC from the Property.

5. HSLLC (and now Leonite and the Receiver) dispute that the Lease was breached or terminated.

6. Included in the Order Appointing Receiver [Docket #18] is a stay of "all actions against the Companies," which includes stay of the Hawaii Ejectment Case in which the issue of breach and termination of the Lease was being litigated. At the time the stay was imposed, HBDC had filed a Motion for Summary Judgment in the Hawaii Ejectment Case, and HSLLC was, according to the Receiver's counsel, prepared and ready to file a response.

7. At this time there is currently before the Court in this action:

   a. HBDC's Motion To Dismiss Complaint ("Motion to Dismiss" [Docket #39]);

b. HBDC's Motion For Relief From Stay and to Amend or Modify the Order Appointing Receiver ("Motion For Relief From Stay") [Docket # 41]).

8. The Motion to Dismiss urges the Court to Dismiss the Complaint herein for lack of subject matter jurisdiction and because the complaint herein fails to state a claim.

9. The Motion For Relief From Stay, asserted alternatively in the event the Court denies the Motion to Dismiss, seeks lift of the stay so that the Hawaii Ejectment Case can move forward to determine the issue of whether the Lease is terminated.

10. All parties herein agree that if the Lease is terminated and no longer has effect, rehabilitation of HSLLC's water business (by the Receiver or anyone else) will be nearly impossible because HSLLC will no longer have access to the only product (Hawaii spring water) it sells.

11. While HBDC acknowledges that the Receiver (and his counsel) has performed significant work in pursuit of his charge herein, he (and Leonite) have known since before inception of this case, that HBDC disputes the Receiver's ability to take possession of the Property, the spring water or otherwise rehabilitate the HSWLLC business because the Lease is terminated.

12. Now that the issue of Lease (and HSWLLC's) viability has been brought to this Court's attention, the issue will likely be determined soon.

13. Whether by dismissal of Leonite's complaint herein, or by determination of the Lease termination issue in favor of HBDC, dismissal of the Receivership remains a real possibility, and in determining the Fee Request the Court should consider that possibility.

14. The most recent Report from the Receiver (Receiver's Interim Report No. 2 [Docket #56]) indicates that the Receiver has received $475,000 in loan proceeds from a

priority loan extended to the receivership by Leonite ("Leonite Loan Proceeds"), and $127,518 from product sales ("Sales Proceeds")

15. The Promissory Note the Receiver delivered to Leonite (Exhibit C to Motion for Relief From Stay [Docket #41]) in exchange for the Leonite Loan Proceeds requires the Receivership to repay such loan proceeds *before* paying other creditors, potentially before, and outside any claim process the Receiver establishes, effectively making Leonite a preferred or priority creditor. If the Receiver uses Leonite Loan Proceeds to pay for his fees and expenses, he will effectively convert future revenue and existing estate assets, up to the amount of the Leonite Loan Proceeds, into amounts useable only for repayment of the Leonite Loan, unreachable by other creditors.

16. If the Receiver uses Leonite Loan Proceeds to pay Receivership fees and costs, and the Receivership is vacated before their repayment, Leonite will potentially have a priority claim over remaining estate assets and revenue, to the exclusion of all other creditors. If, instead, the Receiver pays his fees and costs from other existing estate assets or Sales Proceeds, all creditors, including Leonite, will have equal access to any remaining estate assets and revenue in the event of dismissal.

17. Restricting the Receiver to use of non-Leonite Loan Proceeds in payment of his fees and costs is consistent with the law applicable to a dismissed receivership.

18. Receivership fees in a reversed and vacated receivership may be charged against a receivership estate only "to the extent that they have inured to its benefit." *Speakman v. Bryan*, 61 F.2d 430, 431 (5th Cir. 1932); *Franklin v. City of New York*, 144 F. 2d 571 (2nd Cir. 1944). Thus, the authority to take funds from an estate in a reversed receivership is limited to "*reimbursement out of the property* for his expenditures which have actually benefited the estate." *Speakman, supra*, 61 F.2d at 432 (emphasis supplied).

19. Analyzing whether Receiver expenditures have actually benefitted the estate when the receivership is dismissed will likely be much different than analyzing such expenditures made for an ongoing and successful, receivership.

20. Accordingly, the Court, in considering the Fee Request, should anticipate the possibility that the Receivership herein may be vacated, and, accordingly, include in its order regarding the Fee Request, that payment of fees allowed thereunder be made only from property of the estate, and not from Leonite Loan Proceeds, and that, if the Receivership is vacated, parties may challenge, and the Court may order return of, payments to the Receiver not beneficial to the estate.

WHEREFORE, Defendant Hawaii Brewery Development Co., Inc. ["HBDC"] responds to the Receiver's Interim Fee Request herein and requests that the Court, if and in granting such request, require that any payments made to the Receiver pursuant thereto be made only from non-Leonite Loan Proceeds, and that, if the Receivership hereunder is vacated, the parties retain their right to challenge payments to the Receiver if and to the extent such payments did not benefit the Receivership estate.

Respectfully submitted this 17th day of July, 2024.

*/s Alan S. Thompson*

Alan S. Thompson (Colo. Bar #20238)
Stephen E. Kapnik (Colo. Bar # 7810)
Lohf Shaiman Jacobs PC
950 S. Cherry St., Ste 300
Denver, Colorado 80246
Telephone (303) 753-9000
Email: athompson@lohfshaiman.com

Attorneys for Defendant
Hawaii Brewery Development Co., Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 17th, 2024, I caused a true and correct copy of the foregoing to be filed and served via CM/ECF to counsel of record.

*/s Alan S. Thompson*

Alan S. Thompson