**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00149

**LEONITE FUND I, LP**,

Plaintiff,

v.

**HAWAIIAN SPRINGS, LLC** and **HSW HOLDINGS CORPORATION,**

Defendants.

And

**HAWAII BREWERY DEVELOPMENT CO., INC.**

Intervener Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT HAWAII BREWERY DEVELOPMENT CO., INC.'S MOTION TO MODIFY ORDER APPOINTING RECEIVER TO REQUIRE SUBMISSION OF A PLAN OF REORGANIZATION OR, ALTERNATIVELY, MOTION TO TERMINATE RECEIVERSHIP**

---

Plaintiff Leonite Fund I, LP ("Leonite"), through its undersigned counsel, submits this Response to Defendant Hawaii Brewery Development Co., Inc.'s ("HBDC") Motion to Modify Order Appointing Receiver to Require Submission of a Plan of Reorganization or, Alternatively, Motion to Terminate Receivership (the "Motion"), and in support thereof states as follows:

## INTRODUCTION

The Court should deny HBCD's Motion because the Lease's validity remains unresolved – a threshold issue that must be decided in Hawaii Ejectment Case[1] before this Court can even entertain HBDC's latest attempt to modify or terminate the Receivership. The HBDC's motion is not just premature – it is yet another fragrant disregard of this Court's clear rulings.

As this Court unequivocally stated during the hearing on HBDC's Stay Motion and Motion to Dismiss: "[a]t the end of the day, somebody needs to decide whether or not this lease …is valid and still intact." *See* Respondent's Appx., p. 5 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 4:3-7)). Acknowledging the necessity of that determination, this Court lifted the global stay for the narrow purpose of allowing the Hawaii State Court to "determine the summary judgment motion and/or if it's not clear on summary judgment, to try the issue of ***whether or not this lease was (a) valid***, and (b) has been materially breached…." (emphasis added) This Court was crystal clear that "***we need an answer to that question***." *Id.* at p. 6-7 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 5:25 – 6:4)). The Court stayed the present action pending resolution of that dispute in the Hawaii Ejectment Case. This Court was very clear that "[i]f the answer to [the validity] is yes, then… the next question is how do we eventually move our way out of receivership…." *Id.* at p. 5 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 4:8-10)).

---

[1] The "Hawaiian Ejectment Case" refers to the related matter, captioned *Hawaiian Brewery Development Co., Inc. v. Hawaiian Springs, LLC, et al.*, at Case No. 3CCV-23-410, which is currently pending in the Circuit Court of the Third Circuit for the State of Hawaii.

In disregard of this Court's ruling, in violation of the stay in this case, and despite an ***unfavorable ruling*** on its summary judgment motion against HBDC[2] in the Hawaii Ejection Case (which HBDC inexplicably omits from its Motion), HBDC returns to this Court once again seeking modification or termination of the receivership. HBDC's latest filing is nothing more than a rehash of the same tired, baseless arguments that this Court has repeatedly rejected.

Since its intervention in February 2024, HBDC has been nothing short of a disruptive force in these proceedings, filing motion after motion, each one as meritless as the last. The result? The Receiver has been forced to expend significant resources fending off HBDC's relentless attempts to derail the process – resulting in unnecessary distraction and expense. This Court has already thoughtfully considered the propriety of the receivership and has concluded that the Receiver has done an excellent job and that the Receivership will remain in place until HBDC obtains a ruling on the lease validity dispute in the Hawaii Ejectment Case, at which time the future of the receivership will be ripe for determination in this court.

HBDC's Motion is a shameless, bad-faith attempt to waste judicial resources and derail the Receivership before the validity of the Lease is determined. The only proper course of action remains exactly what this Court has already determined: the Hawaii State Court must first decide the validity of the Lease, and only then can this Court consider any issues relevant to the Receivership. HBDC's continued attempts to relitigate settled

[2] On December 31, 2024, the Hawaii State Court denied HBDC's Motion for Summary Judgment and a Writ of Possession because "[b]ased on the language of the lease provisions, the court finds genuine issues of material fact as to the time reasonably required to cure any defaults, including but not limited to payment of insurance and percentage rent and [Hawaiian Springs LLC's] entering into a security agreement without [HBDC's] consent." *See* Respondent's Appx. at p. 26 (Plaintiff's Exhibit 2 (Order, Dkt. 85 at p.3)).

issues must stop. This Court should deny HBDC's Motion in its entirety – preferably with prejudice – to prevent further abuse of the judicial process.

## BACKGROUND

1. Defendant Hawaiian Springs, LLC ("HSLLC") is a producer of premier bottled water products.

2. HSW Holdings Corporation ("HSW") is a holding company that owns a percentage of the issued and outstanding shares of HSLLC and is the Manager of HSLLC.

3. HSLLC's business operations are located on a parcel of land in Kea'au, Hawaii.

4. HSLLC leases the land (the "Leased Premises") pursuant to a lease agreement (the "Lease") between HSLLC and Hawaii Brewery Development Co., Inc. ("HBDC").

### *Appointment of Receiver and Imposition of the Stay*

5. Leonite loaned money to HSLLC and HSW (collectively, the "Borrowers"), as evidenced by a Senior Secured Promissory Note dated September 28, 2022 (the "Note"), and as amended by a First Amendment to Senior Secured Convertible Promissory Note, dated March 20, 2023. *See* Exhibit A to the Complaint at Docket No. 1.

6. The Borrowers' obligations under the Note are secured by a Pledge and Security Agreement (the "Security Agreement") made by Borrowers for the benefit of Leonite, as Lender, which grants Leonite a security interest in certain collateral, including the Lease and other contracts. *See* Exhibits A and B to the Complaint.

7. Events of Default as defined in the Note and Security Agreement occurred and HSLLC failed to cure the same.

8. Following the Events of Default, Leonite loaned additional funds to HSLLC to bring HSLLC current on its rent and other obligations to HBDC.

9. In December 2023, Leonite sent a notice of default to the Borrowers asserting that they were in default of their payment obligations under the Note and that, as of that date, the sum of $2,254,323.58 was due and owing by the Borrowers to Leonite.

10. The Borrowers lacked sufficient assets to repay the substantial sum owed to Leonite.

11. The Security Agreement entitles Leonite to the appointment of a receiver "as a matter of right" upon an Event of Default. *See* Exhibit B to the Complaint at Section 7(a)(i)(G); *see also* Exhibit A to the Complaint at ¶ 4.1.5.

12. Absent appointment of a receiver, the interests of Leonite and other creditors were in dire jeopardy. If HSLLC continued to be unable to make timely payment on its lease obligations and was evicted from the Leased Premises, HSLLC would lose its sole source of premier water and would be unable to remain in business, causing substantial damage to the creditors, investors, and employees of the Borrowers, including Leonite.

13. In accordance with the terms of the Note and Security Agreement, and due to the financial issues and crises they were facing, on December 26, 2023, the Borrowers agreed to the appointment of Robert L. Stevens as receiver (the "Receiver"), with each entity executing a unanimous written consent of their respective members and managers (the "Unanimous Written Consents"). *See* Exhibits C and D to the Complaint.

14. Leonite and the Borrowers selected Mr. Stevens as Receiver for the reasons discussed in detail in Leonite's Motion to Appoint Receiver, including that he is a qualified receiver who resides in Colorado, where the Borrowers sell products, where Leonite is duly registered to do business,[3] and where Leonite and the Borrowers both agreed to venue and governing law. *See Motion to Appoint Receiver* at Docket No. 3; Exhibits C, D, and E to the Complaint.

15. Accordingly, on January 8, 2024, Leonite filed its Complaint for Appointment of a Receiver (the "Complaint"), commencing the above-captioned lawsuit against the Borrowers as defendants and seeking appointment of the Receiver as provided for "as a matter of right" by the Security Agreement and Note and pursuant to Fed. R. Civ. P. 66 and C.R.S. 38-38-602(3). Docket No. 1.

16. On January 18, 2024, Leonite filed its Motion to Appoint Receiver, requesting that the Court appoint Mr. Stevens as receiver and impose a blanket stay to prevent interference with the receivership estate pursuant to the express terms of the Security Agreement and Note, F.R.C.P. 66(a), and Colorado law. Docket No. 3.

17. On February 1, 2024, the Court entered its Order Appointing Receiver, which found, among other things, that Fed. R. Civ. P. 66 authorizes the Court to appoint a receiver, that the parties agreed to appointment of a receiver, agreed to be bound by Colorado law, and that Colorado law authorizes the appointment of a receiver under the

[3] *See* Respondent's Appx. at 30 (Plaintiff's Exhibit 3 (Certificate of Good Standing for Leonite certified by the Secretary of State of the State of Colorado), which is properly subject of the Court's judicial notice pursuant to F. R. E. 201 insomuch as it is a public record maintained by the Colorado Office of the Secretary of State that is not reasonably subject to dispute. *See Allstate Ins. Co. v. Cruz*, 733 F. Supp. 3d 1098, 1101, n.1 (D. Colo. 2024) ("The Court may take judicial notice of its own files and records, facts that are a matter of public record, and filings in related cases.") (citations omitted).

circumstances present in this case, and stayed all actions against HSLLC and HSW (the "Stay"). Docket No. 18.

18. The Order Appointing Receiver sets forth in great detail the scope of the receivership and the obligations of the Receiver. Docket No. 18.

19. The Order is broad in scope, yet specific in its description of the Receiver's powers, authorizing the Receiver to, among other things:

> b. Manage, maintain, protect and preserve the Receivership Property as reasonably necessary to maximize the value and prevent diminution of its value;
> . . .
> h. Negotiate any new contracts and have all powers necessary to run the Companies.
> . . .
> l. Sell any corporate assets to satisfy judgments against the Companies;
> m. Order dividends, distributions or other such actions that may be required for dissolution or reorganization of the Companies;
> n. Do any and all acts necessary and convenient or incidental to the foregoing that the Receiver reasonably deems necessary to manage and preserve the Receivership Property."
> . . .
> p. Borrow money, issue receiver's certificates, incur debt, issue any class of stock, debenture or other financial instrument as required to finance the administration of the estate.

*Id.*

***HBDC's Interference with the Receivership***

20. Despite being represented by competent counsel and receiving notice of the Receiver's appointment shortly after his appointment on February 1, 2024, HBDC waited until April 25, 2024, to file its Motion to Intervene, requesting authorization to intervene as a defendant in this action, which the Court granted. Docket Nos. 26 and 36.

21. "From February 1, 2024, when it knew about this case, until April 26, 2024 when it moved to intervene, [HBDC] accepted the benefits of the Receivership including

receiving tens of thousands of dollars from the Receiver in rent, past due obligations owed on the power purchase agreement, and the restoration of power to the Property. Indeed, [HBDC] *insisted* that the Receiver restore power to the Property and that the Receiver otherwise protect the property." Docket No. 45.

22. Upon receiving those benefits, and since intervening in this action, HBDC has filed motion after motion attempting, unsuccessfully, to modify and/or terminate the Receivership in what appears to be an attempt to ultimately remove the valuable long-term Lease from the Receivership, which act would solely benefit HBDC to the detriment of HSLLC and the rest of its creditors.

23. On May 31, 2024, HBDC filed its Motion to Dismiss Complaint, seeking an order dismissing the claim with prejudice pursuant to Fed. R. Civ. P. 12(b), terminating the Receiver's appointment, and lifting the stay imposed on HBDC's Hawaii Litigation and any other stayed cases (the "Motion to Dismiss"). Docket No. 39.

24. On June 17, 2024, HBDC filed its Motion for Relief from Stay and to Amend or Modify the Order Appointing Receiver (the "Stay Motion"), seeking relief from the Stay in order to pursue the Hawaii Ejectment Case—wherein it seeks to eject HSLLC from the Leased Premises due to its alleged breach of the Lease—and asserting that circumstances have so "drastically changed" since the Court appointed the Receiver on February 1, 2024, that the Court should limit the Receiver's activities to preserving the Property without attempting to re-start the business. Docket No. 41.

25. On June 25, 2024, HBDC filed a supplement to its Stay Motion asserting that the Stay violates 28 U.S.C. § 2283. Docket No. 48.

26. On July 29, 2024, the Court held a hearing on HBDC's Motion to Dismiss and Stay Motion, and the Receiver's Interim Fee Request (the "Hearing"), upon the conclusion of which the Court entered its Courtroom Minutes/Minute Order (the "Order") that (i) denied HBDC's Motion to Dismiss as moot pending an amended complaint, (ii) stayed the filing of the amended complaint and all further litigation in this case other than the Receiver's reports, and (iii) granted HBDC relief from the Stay to allow the Hawaii Ejectment Case to proceed in Hawaii State Court. Docket No. 62.

27. During the Hearing, the Court noted that "the receiver has done what we've asked the receiver to do, which is to get this thing in place pending a decision on whether or not this lease is valid and materially breached," and "I think the receiver, by all accounts, has done an excellent job." *See* Respondent's Appx. at 7, 10 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 6:21-22, 9:20-21)). The Court explained that:

> And so, again, nobody seems to have an issue with what the receiver is actually doing at this point. It's just whether they should be doing what they're doing, or whether HBDC should take back their land. And we're going to get an answer on that at some point from the Hawaii State Court.

*Id.* at p. 18 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 17:8-12)).

28. The Court further stated during the Hearing that "[] if the only objection is [] we want the receivership ended, I'm going to keep it in place until we get ruling from the State Court on this issue" and "[] to the extent that the only objection is whether the receivership should be in place . . . I'm not going to then require any further hearings on this." *Id.* at p. 11, 18 (Plaintiff's Exhibit 1 (Hearing Tr., July 29, 2024 at 10:5-7, 17:23-24)).

29. Upon receiving the relief from stay and modification of the Receiver Order to proceed with its litigation in the Hawaii Ejectment Case, HBDC promptly filed a Motion for Summary Judgment and Writ of Possession in the Hawaii State Court, alleging that

HSW had effectively abandoned the Leased Premises and requesting that the Hawaii State Court find HSW in default of the Lease and that HSW had failed to cure the default and issue a Writ of Possession and Judgment of Possession.

30. On December 31, 2024, the Hawaii State Court denied Plaintiff's Motion for Summary Judgment and Writ of Possession.

31. The Hawaii Ejectment Case is set for a bench trial to commence October 27, 2025.

32. The critical issue of the validity of the Lease has not yet been decided by the Hawaii State Court.

33. Now, failing to obtain a favorable outcome in the Hawaii Ejectment Case, HBDC returns to this Court for yet another bite at the apple; once again, HBDC petitions this Court to modify the Order Appointing Receiver or, alternatively, terminate the Receivership altogether.[4]

34. HBDC argues once again that circumstances since entry of the Receiver Order have changed such that "revisiting and modifying the Receiver Order" is justified—an argument HBDC has already advanced unsuccessfully. *Motion* at p. 9.

35. HBDC's Motion violates the stay in this case and undermines the stay's aim to promote judicial efficiency pending adjudication of the central Lease validity issue in the Hawaii Ejectment Case.

---

[4] The inadequacy of HBDC's purported attempt to confer with undersigned counsel for Leonite regarding the Motion to Modify or Terminate is worth noting. HBDC states that counsel for HBDC attempted to confer with counsel for Leonite and received no response. *Motion to Modify or Terminate* at p. 1. To be clear, counsel for HBDC contacted counsel for Leonite on Thursday, February 20, 2025, advising that it intended to file the Motion to Modify or Terminate and giving Leonite to the following Monday, February 24, to respond. Given that the Motion to Modify or Terminate contains a substantial amount of new factual allegations previously unknown to counsel for Leonite, HBDC's attempt to confer failed to provide Leonite adequate time to respond as to its position.

## ARGUMENT

***A. The Receiver is acting within the authority bestowed upon it in the Order Granting Receiver.***

36. Leonite takes vehement exception to HBDC's false, misleading, and unfounded characterization of Leonite as a "professional litigant" with alleged collusive and undisclosed ties to the Receiver that impliedly thereby requires the Court's application of some heightened measure of scrutiny or skepticism as to the relief it seeks herein. *See Motion* at 5-6 and Exhibits 3-4. This is nothing more than a cheap smear tactic that the Court should reject outright.

37. **First**, HBDC's allegations are not even true. Leonite Capital, LLC is *not* Leonite's parent company (contrary to HBDC's misrepresentation otherwise at p. 5). Nor is there any legal reason or record basis for the Court to artificially treat the two separate companies as 'one and the same' for the purposes of this Motion. And, finally, out of the total **twenty-three** matters identified on HBDC's Exhibits 3 and 4, only **four** of those cases (excluding this action) involve Leonite.

38. **Second**, even assuming Leonite was a "professional litigant" (which it is not), respectfully, so what? There is no constitutional or inherent limitation on the number of times an injured party can access our court system for judicial intervention in resolving a dispute. To penalize Leonite (or any litigant) for the exercise of its constitutional rights an arbitrary 'too many times,' as HBDC impliedly suggests, is antithetical to American justice and would cause have nothing short of a disastrous impact on access to financing in United States and any other industry prone to post-closing defaults.

39. For the reasons stated in Leonite's Motion to Appoint Receiver, including that he is a qualified receiver who resides in Colorado, where the Borrowers sell products

and where Leonite and the Borrowers have agreed to venue and governing law, Mr. Stevens is well-qualified to serve as Receiver in this case. *See Motion to Appoint Receiver* at Docket No. 3.

40. Indeed, this Court has acknowledged that the Receiver "has done what we've asked the receiver to do, which is to get this thing in place pending a decision on whether or not this lease is valid and materially breached," and that "the receiver, by all accounts, has done an excellent job."

41. Since his appointment, the Receiver has acted within the broad scope of the Order Appointing Receiver and within the specific powers bestowed upon him by this Court to manage, maintain, protect and preserve the Receivership Property as reasonably necessary to maximize the value and prevent diminution of its value. *See* Docket No. 18.

42. The Receiver reported positive operational milestones, where "[w]ith Leonite's support, the Receiver and the receivership staff have achieved operational status, which has positively impacted all the creditors and stakeholders." The Receiver's Interim Report No. 2 dated July 15, 2024.

43. As the Court acknowledged during the July 29, 2024 Hearing, it is in the best interest of all interested parties for the Receiver to keep the business in operation, and that is what he has aimed to do and succeeded in doing.

44. Specifically, the Court noted: "[m]y inclination is to stay the litigation proceedings." *See* Respondent's Appx. at p. 10 (<u>Plaintiff's Exhibit 1</u> (Hearing Tr., July 29, 2024 at 9:19-21)). Next, the Court commended the Receiver's performance: "I think the receiver, by all accounts, has done an excellent job." *Id.*

45. Following the December 31, 2024 ruling in the Hawaii Ejectment Case, the Receiver outlined the next logical steps, stating that "[t]he Receiver will continue to oversee and fund the defense of the eviction case and update the Court on any key developments." The Receiver's January 6, 2025 Interim Report No. 3.

46. Accordingly, HBDC has failed to establish that the Receiver has acted outside the scope of the authority bestowed upon it in the Order Granting Receiver.

47. HBDC has likewise failed to establish that any legal authority supports its most recent request to modify the Order Granting Receiver. Indeed, HBDC's requested modifications would restrict the Receiver's authority and impair his ability to fulfill the objectives of the Receivership, including but not limited to the management, maintenance, protection, and preservation the Receivership Property as reasonably necessary to maximize the value and prevent diminution of its value.

48. For these reasons, HBDC's request to modify the Order Appointing Receiver should be denied.

### *B. Grounds do not exist to modify the Order Appointing Receiver*

49. HBDC argues once again that circumstances since entry of the Receiver Order have changed such that "revisiting and modifying the Receiver Order" is justified. *Motion* at p. 9.

50. The changed circumstances HBDC alleges are as follows:

> 1. HBDC, which was intentionally excluded from this case at its inception, is now a party;
> 2. The Receiver appears to be acting outside the scope of his authority;
> 3. A year and more than one million dollars have been spent on efforts to reorganize with no objective or end in sight;
> 4. The Receiver has articulated no objectives for the receivership/Business and proffered no discernable plan or even concept, of reorganization; and

> 5. There has been no increase in the Business's revenue even close to the amount necessary to pay the more than $9 million in liabilities faced by the Defendants,6 let alone the amount ($10 million as opined by HBDC's expert – *see* Exhibit 6) necessary to build a successful bottled-water business on the island of Hawaii.

*Motion at* p. 10.

51. Contrary to HBDC's assertions, the circumstances existing at the time this Court entered the Order Appointing Receiver have not drastically changed and, in any event, have not changed in a manner that would support modification of the Order Appointing Receiver.

52. As with its prior motions filed in this case, the Motion to Modify or Terminate is scant on legal authority.

53. As to HBDC's first point, HBDC was a party to this action when it filed its Motion to Dismiss and its Stay Motion, thus, that "circumstance" has not changed since HBDC's last attempt to modify/terminate the Receivership. Moreover, HBDC fails to articulate in what way the fact that HBDC became a party to this action after entry of the Order Appointing Receiver justifies modification of the same.

54. As to HBDC's second point concerning whether the Receiver has acted within his authority, as discussed above, the Receiver has at all relevant times acted within the broad scope of and express powers bestowed by the Order Appointing Receiver. As a result, the Receiver's conduct does not constitute a change in circumstance that would justify HBDC's attempt to modify/terminate the Receivership

55. Contrary to HBDC's assertion in its third point, as this Court explained during the Hearing, the end is in sight. The Hawaii Ejectment Action is set for a bench trial to commence October 27, 2025. Once the Hawaii State Court rules on the lease validity dispute, the issue of the future of the receivership will be ripe for determination in

this Court. This Court has already ordered that the Receivership will remain in place until such time. In addition to being factually incorrect, this simply is not a change in circumstances, much less a significant change in circumstances that might warrant modifying the Order Appointing Receiver.

56. As to HBDC's fourth point, one of my primary objectives was to relaunch production, which has been accomplished. HSLLC has $982,000 in total inventory, all produced since the Receiver restarted operations. Since appointment, HSLLC has generated $633,974.73 in sales, and for January through March 18, 2025, has generated $262,374.20 in sales. At the time of appointment, the operations were completely shut down and no revenue was generated. *See* Respondent's Appx. at p. 32 (Plaintiff's Exhibit 4 (Declaration of Robert L. Stevens at ¶¶5-6)).

57. As to HBDC's fifth point, production capacity continues to improve due to the Receiver's efforts toward maintenance and upgrades to the plant. Since January 1, 2025, the plant has produced 41,280 cases with a wholesale value of $835,920. *Id.* at ¶7. The suggestion that the standard here is (or should be) that all debt needs to repaid lacks legal authority and commonsense.

58. That HBDC wishes HSLLC had filed for bankruptcy in Hawaii is of no legal import. Leonite brought this action to appoint a receiver in accordance with the terms of the Note and Security Agreement, and this Court has already determined that Leonite was within its rights to do so. The Receiver's actions are governed by the Order Appointing Receiver, not by the Bankruptcy Code, and the Receiver is under no legal or equitable obligation to prepare a plan of reorganization. Rather, as set forth in the Order Appointing Receiver, the Receiver is charged with maximizing the value of the estate. He

is competent to fulfill that mandate, which includes ensuring that the company is operational and continuing to generate revenue. As the Receiver has stated in numerous pleadings, the Receiver's ultimate goal is to sell the company, which requires that operations resume, and that revenue therefrom becomes steady so that the business will attract an acquiror. In any event, the fact that the Receiver has not prepared a plan of reorganization or in the span of just over a year rehabilitated the business such that millions are readily available to pay creditors is not a change in circumstances, much less a significant change in circumstances that would warrant modifying the Order Appointing Receiver.

59. Accordingly, no significant changes in circumstances have occurred since the entry of the Order Appointing Receiver that would justify modification thereof, and HBDC's request to modify the Order Appointing Receiver should be denied.

## CONCLUSION

WHEREFORE, Plaintiff Leonite Fund I, LP respectfully requests that this Court deny Defendant Hawaii Brewery Development Co., Inc.'s Motion for Relief from Stay and to Amend or Modify the Order Appointing Receiver and grant such other and further relief as the Court deems proper

Dated: March 18, 2025 Respectfully submitted,

*/s/ Aaron A. Garber*

Aaron A. Garber, #36099
WADSWORTH GARBER WARNER CONRARDY, P.C.
2580 West Main Street, Suite 200
Littleton, Colorado 80120
Telephone: (303) 296-1999
Telecopy: (303) 296-7600
agarber@wgwc-law.com

and

*/s/ Oliver D. Griffin*

Oliver D. Griffin, #52262
GRIFFIN PARTNERS, LLP
123 S. Broad Street, Suite 1850
Philadelphia, PA 19109
Telephone: (267) 499-3273
Telecopy: (267) 427-8139
oliver.griffin@griffinlawllp.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 18, 2025, I served by prepaid first class mail a copy of **PLAINTIFF'S RESPONSE TO DEFENDANT HAWAII BREWERY DEVELOPMENT CO., INC.'S MOTION TO MODIFY ORDER APPOINTING RECEIVER TO REQUIRE SUBMISSION OF A PLAN OF REORGANIZATION OR, ALTERNATIVELY, MOTION TO TERMINATE RECEIVERSHIP** on all parties against whom relief is sought and those otherwise entitled to service at the following addresses:

Tracy L. Ashmore
tashmore@rwolaw.com,hstahl@rwolaw.com

Stephen E. Kapnik
skapnik@lohfshaiman.com,ljohnson@lohfshaiman.com

Alan Stewart Thompson
athompson@lohfshaiman.com,aculligan@lohfshaiman.com

*/s/ Nichole Garber*
For Wadsworth Garber Warner Conrardy P.C.