**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:24-cv-00149-NYW-STV

LEONITE FUND I, LP,

Plaintiff,

v.

HAWAIIAN SPRINGS, LLC and HSWLLC HOLDINGS CORPORATION,

Defendants,

and

HAWAII BREWERY DEVELOPMENT CO., INC.,

Defendant, Counterclaimant, and Crossclaimant.

---

**REPLY IN SUPPORT OF**

**MOTION TO MODIFY ORDER APPOINTING RECEIVER**
**TO REQUIRE SUBMISSION OF A PLAN OF REORGANIZATION**
**OR, ALTERNATIVELY, MOTION TO TERMINATE RECEIVERSHIP**

**FILED BY HAWAII BREWERY DEVELOPMENT CO., INC.**

---

Defendant Hawaii Brewery Development Co., Inc. ["HBDC"] files this Reply in support of its "Motion to Modify Order Appointing Receiver etc." [Doc. 90, "Motion"] as follows:

## INTRODUCTION

Plaintiff Leonite Fund I, LP ["Leonite"] and the Receiver filed responses which -- aside from vociferously objecting to what is concededly an inadvertent error[1], characterize

---

[1]HBDC apologizes to the Court and counsel for its attorneys' having incorrectly asserted that the Receiver objected to HBDC's intervention.

HBDC's attempts to protect its interests as filing "motion after motion" that dared challenge the Receiver, as bad faith and *shameless.*[2] Leonite doubles down on its dramatic hyperbole claiming *based on this Court's comments a nearly year ago*, that the Receiver has done and can do no wrong; yet, as demonstrated below, the Receiver has done and left undone plenty, not only to HBDC's unfair prejudice, but to that of all other creditors as well. While taking no authentic, industry-standard steps to create a viable bottled water business, nor, apparently, even making any plans to do so, the Receiver's actions thus far clearly favor, and are solely directed to the purposes of, its benefactor, Leonite.

As noted by the Receiver (Receiver's Response, at 3) the Court stated in its July 29, 2024 Order, "If there is something unreasonable being done by the receiver, then file an objection and I'll take that up." HBDC's Motion illustrates the unreasonableness of the Receiver's continued approach to this receivership, and while Leonite and the Receiver only stonewall the arguments made and information provided in the Motion (which as demonstrated below, is now the Receiver's MO), neither offer any authority or reason why equity must tolerate an unrestrained, unending, rudderless, or inappropriately focused receivership. As was shown in the Motion, and again herein, the receivership must either be controlled or terminated.

## ADDITIONAL BACKGROUND

1. Despite Leonite's protestation, Leonite Capital LLC ["Leonite Capital"] is relevant to this case. Leonite Capital may not be Leonite's parent, but the two are legal affiliates. Leonite's manager Avi Geller (*see* Doc. # 46 herein) beneficially controls and is

---

[2] Leonite Response, page 3. Note, this rich comment comes from a professional litigant that at first denies it is a professional litigant (Leonite's Response at ¶ 36), and then in its very next breath admits litigation is a crucial tool to its predatory, high interest, convertible, loan-centric business model. [Leonite Response, ¶ 38)].

the Chief Investment *Officer* of Leonite Capital. (*See* SEC Form 4, attached hereto as **Exhibit 1**.)

2. Leonite Capital owns approximately 41% of a company called Eco-Growth Strategies, Inc. ("Eco-Growth"). (*See* Eco-Growth's December, 2024, Quarterly Report, attached hereto as **Exhibit 2.)**

3. On March 12, 2025 [after the Motion was filed], Eco-Growth issued a press release, picked up by NASDAQ and most other financial reporting services, which stated (**Exhibit 3,** emphasis supplied**)**:

> HONOLULU, March 12, 2025 /PRNewswire/ -- Eco-Growth Strategies, Inc. (OTC PINK: ECGS), a leading bottler specializing in purified and spring water, announced today that it **has executed a merger agreement to acquire all assets of Hawaiian Springs Water Company** (HSW). The plant is situated on approximately 7 acres of leased facilities near Hilo, HI. The main bottling facility is approximately 33,000 square feet, which includes warehousing. The plant facility also includes a solar farm (PV) providing an alternative power source to the existing power facilities. The acquisition, valued at $4.5 million, is contingent on successful due diligence and the company's planned uplisting to a senior exchange by the end of Q2 2025. ECGS is actively working to meet the necessary requirements to complete both the uplisting and the transaction.

4. Almost immediately thereafter, Eco-Growth's stock price increased nearly 10%. (*See* AllPennyStocksNews.com story attached hereto as **Exhibit 4.)**

5. On March 14, 2025 the Receiver issued the following press release:

> HILO, Hawaii, March 14, 2025 /PRNewswire/ -- Hawaiian Springs, LLC ("HSW") was made aware of a press release dated March 12, 2025, by Eco Growth Strategies, Inc., claiming it had entered into a merger agreement with our company.
>
> Eco Growth Strategies referenced an agreement entered into prior to February 1, 2024, when a receiver was appointed over the assets of Hawaiian Springs LLC and HSW Holdings Corporation in Civil Action No. 24-cv-00149-NYW-STV in the United States District Court for the District of Colorado. Any potential acquisition of the company would require approval from the District Court.

> Management has made great strides in revamping operations and rebuilding sales and hopes to share more in the future. We remain committed to transparency and responsible business operations as we navigate the receivership process.
>
> For any official inquiries, please contact: Robert Stevens, Receiver

(*See* **Exhibit 5.)**

6. On February 25, 2025, Eco-Growth acquired Hawaiian Isles Water, a competing bottled water concern that sells bottled water throughout Hawaii. (*See* **Exhibit 6**.)

7. At the same time Leonite commenced this action, 5,000 miles from the subject matter, and while Leonite's activities remained essentially uncontested, neither Leonite nor the Receiver disclosed herein:

a. The Receiver's previous relationship with Leonite Capital;

b. The relationship between Leonite Capital and Leonite;

c. The relationship between Leonite Capital (and Leonite) and Eco-Growth, and Eco-Growth's plan now to, what looks like, corner the bottled water production market in Hawaii;

d. Prior to its execution, the convertible Preferred Promissory Note between Leonite and HSW and HSW Holdings;

e. The amount HSW and HSW Holdings now owe Leonite entities, as a priority over all other creditors;

f. The relationship between Avi Geller and the Leonite entities;

g. Any agreement "entered into prior to February 1, 2024, between Eco-Growth Strategies and HSW or HSW Holdings," described by the Receiver in Exhibit 5;

h. Any of the communications – that obviously occurred before filing and are now continuing – between the Leonite entities and the Receiver and the Receiver's counsel in this action; or

i. The Receiver's purported "regular meetings with <u>all</u> creditors" and the results of such meetings.

8. HSW will not lose "its sole source of premier water" in the absence of the Lease. Many other water sources, including that utilized by Eco-Growth's new acquisition Hawaiian Isles Water, with similar quality water, exist on the Island of Hawaii. With the capital necessary to create a *successful* bottled water company on the island of Hawaii -- which HBDC's unrebutted and undisputed expert testimony establishes is ten million dollars – HSW could obtain another source. And perhaps Eco-Growth's acquisition of Hawaiian Isles Water has done just that.

9. On or about March 21, 2025, counsel for the Receiver emailed HBDC's counsel that the "Receiver received an offer from Leonite to purchase the plant only (not the solar farm) for $2,000,000.00." **Exhibit 7.** Neither of Leonite's lawyers knew about the offer. Thus, the lawyers who signed Leonite's Response not only knew little or nothing of the facts cited in the Motion (Leonite Response at Footnote 4) but also could provide HBDC's counsel *no* information about the offer.

10. In its Response, Leonite failed to provide even one example of how any modification of the Order Appointing Receiver would "impair [the Receiver's] authority and impair his ability to fulfill the objectives of the receivership, including but not limited to the management, maintenance, protection, and preservation of the receivership Property as reasonably necessary to maximize the value and prevent diminution of its value." (Leonite's Response, ¶ 47.) The Receiver's self-assured claim that nothing could or should change in the way the receivership is being conducted is similarly misplaced. In fact, the requested modifications will help the Receiver accomplish his goals by requiring him to create a plan of reorganization that *all* creditors and potential purchasers (including the insider, Leonite) and the Court can evaluate.

11. That Leonite intentionally excluded HBDC from this action initially is precisely a reason for modification. Leonite's strategy, commenced with the Receiver's participation, in a forum thousands of miles from the situs of the property of the receivership, ensured its ability to obtain the Receiver Order without resistance and the process proceeded without the fairness and evenhandedness that naturally results from a true adversary proceeding. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 382 - 83 (1980) (the "clash of adverse parties" in a lawsuit "sharpens the presentation of issues upon which the court so largely depends for illumination of difficult questions"). The Receiver Order that Leonite presented to the Court was naturally one-sided and overly beneficial to Leonite. (For example, witness the speed and ability of the Receiver to enter into the convertible *preferred* Note with Leonite, without notice or having to seek court approval.)

12. Even if the Receiver, a year ago, was performing well, it is no longer true. Since his appointment the Receiver has failed to perform numerous duties under the Receiver Order appointing him and under the Lease. Specifically, the Receiver has:

a. Failed to perform building maintenance deferred by HSW but required under the Lease, including replacement of the roof, and correction of other issues in the amount of nearly $250,000;

b. Failed to purchase liability and property insurance required under the Lease, and thus unfairly placing the burden on HBDC;

c. Failed and refused to provide HBDC access to the water well so it can access its share of the well water (*see* email correspondence attached as **Exhibit 8)**;

d. Failed and refused to provide HBDC financial information which HBDC needed to apply for and obtain refinancing, and to determine if additional

(percentage) rent is due [*see* correspondence also attached as Exhibit 8, starkly illustrating the Receiver's ability to stonewall];

e. Failed to articulate or execute an industry-appropriate plan for creation of a successful bottled water business on Hawaii; and

f. **Increased revenue but has never produced a profit.**

**ADDITIONAL ARGUMENT**

13. The needless stasis into which the Receiver has placed HSW as he awaits the decision in the Hawaii Ejectment Case is indeed harming HBDC.

14. Paragraph 5 of the Lease carefully limits and restricts the permitted use of the Property to "extraction of water from the well . . . into bulk containers for transportation and shipment to other sites and in addition [to] engage in the processing, bottling, packaging and wholesale sales of the water." The Receiver is limited to uses permitted under the Lease. See *Hawaiian Ass'n of Seventh-Day Adventists v. Wong*, 305 P.3d 452, 471 (Haw. 2013).

15. The Receiver is *not* free under the Lease to sell any part of, or rights to, the Property or sub-lease any part of it, to allow Leonite (or anyone else) to conduct a penny stock offering, either merely to elevate (potentially artificially) Leonite or Eco-Growth stock or to make any stock play that would negatively affect the Property or sales of water under the Lease. It is thus crucial for the Receiver to disclose communications and plans he may have made with Leonite that may be for any purpose other than the limited purposes permitted under the Lease.

16. Further, under the Lease, the Tenant [HSW] has an obligation to start paying additional Percentage Rent when its revenues reach a pre-determined amount. Hawaii law implies a covenant and duty of good faith and fair dealing upon the Tenant to act in a

reasonable and honest way in performing its duties under the Lease, and accordingly, to take reasonable commercial measures to reach that revenue level. *See Best Place v. Penn Am. Ins. Co.*, 920 P.2d 334, 338-39 (Haw. 1996).

17. The Receiver may not simply rest on his laurels making uninformed, nonexpert, routine business decisions untailored to the specifics of the water bottling business, decisions and actions designed to assist, and buy time for, Leonite and its affiliate Eco-Growth to corner the Hawaii bottled water production market, and presumably take some associated action in the penny stock market. While the Receiver may be pleased that his generic business strategies have made some progress to increase revenue over the *complete lack* of any revenue HSW was generating prior to his appointment, as Mr. James Stevens, HBDC's expert pointed out, such middling efforts and Leonite's heretofore small contribution of capital are not sufficient to create and operate a successful bottled water business in Hawaii.

18. The duty of good faith requires the Receiver, acting as the Tenant, to make reasonable efforts to create a successful bottled water business, and such reasonable efforts include a capital infusion which HBDC's now unrebutted expert believes to be in the neighborhood of $10 million – far above the Leonite "offer."

19. Regardless of whether the Hawaii Court deems the Lease breached or not, if Leonite and the Receiver are unwilling to contribute at least $10 million to the effort, the Receiver is just fiddling while Leonite's Titanic (and HBDC's chance for any Percentage Rent) sink into the blue Pacific.

20. At the very least, if the Receiver will not be so forthcoming, and will not even formulate and produce a plan to inform creditors about whether he intends to build a bottled water business or a facilitate a penny stock play, HBDC should be granted discovery in this

matter to explore the Receiver's (and Leonite's) true intentions, goals, and strategies, so everyone can understand the true aim and goals of this most unusual and unconventional receivership.

WHEREFORE, Defendant Hawaii Brewery Development Co., Inc. moves the Court to terminate or modify the Receiver Order in accordance with the requests in the Motion and herein, and enter such other and further relief as is just.

Respectfully submitted this 1st day of April, 2025.

*/s Alan S. Thompson*

___________________________________

Alan S. Thompson (Colo. Bar #20238)
Stephen E. Kapnik (Colo. Bar # 7810)
Lohf Shaiman Jacobs PC
950 S. Cherry Street, Suite 300
Denver, Colorado 80246
Telephone (303) 753-9000
Email: athompson@lohfshaiman.com

Attorneys for Hawaii Brewery Development Co., Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 1, 2025 I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION TO MODIFY ORDER APPOINTING RECEIVER TO REQUIRE SUBMISSION OF A PLAN OF REORGANIZATION OR, ALTERNATIVELY, MOTION TO TERMINATE RECEIVERSHIP FILED BY HAWAII BREWERY DEVELOPMENT CO., INC.** to be filed and served via CM/ECF to counsel of record.

*/s Alan S. Thompson*

______________________

Alan S. Thompson